# Illinois Official Reports

## Appellate Court

---

### *People v. Curry*, 2018 IL App (1st) 152616

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JARROD CURRY, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-2616 |
| Filed | February 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-22405; the Hon. Carol M. Howard, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part, and mittimus corrected; fines and fees order corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Meredith N. Baron, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Clare Wesolik Connolly, Mary P. Needham, and Scheagbe Mayumi Grigsby, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, the defendant-appellant, Jarrod Curry, was convicted of armed violence (count I), possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of heroin (count II), and possession of a controlled substance with intent to deliver less than 1 gram of cocaine within 100 feet of a park (count III). He was sentenced to 15 years' imprisonment on count I, 15 years' imprisonment on count II, and 5 years' imprisonment on count III, with all three sentences to run concurrently. The defendant now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County in part, vacate the judgment in part, order the mittimus to be corrected, and order the fines and fees to be corrected.

¶ 2                                    BACKGROUND

¶ 3    At the defendant's bench trial, Sergeant David Koenig, Officer Jose Rojas, and Officer Richard Piek of the Chicago Police Department testified on behalf of the State. The officers testified that on October 19, 2013, at 8:40 a.m., 12 police officers executed a search warrant at the second-floor rear apartment at 1444 South Trumbull Avenue, Chicago, Illinois. The search warrant was based on a report that a man named "Tony" was selling drugs out of that apartment. The officers were all in civilian dress, but were readily identifiable as police officers because they wore vests, outer stars, weapons, radios, handcuffs, and duty belts. The police officers approached the apartment from the rear alley and saw the defendant standing on the second-floor landing near the back door of the apartment. They saw the defendant turn, face them, and "pull like his right side, like the waistband area, and proceed to run into the second-floor apartment," closing the door behind him. Within minutes, the police officers knocked on the door, yelled "Chicago Police," and made a forced entry through the back door.

¶ 4    Once inside, Officer Rojas saw the defendant running toward the front door and pursued him into the interior stairwell. Sergeant Koenig and Officer Piek followed a few feet behind Officer Rojas. Once they were inside the interior stairwell, Officer Rojas observed the defendant "go into his right waistband area along with his right hand and his left hand go into the [front sweatshirt pocket]" and discard two items onto the second-floor landing. Sergeant Koenig also saw the defendant retrieve something from the right side of his body and "flee as he was discarding the items." Officer Rojas picked up the discarded items, which consisted of a "plastic baggie containing numerous pink tinted Ziploc baggies of suspect heroin," and a .25-caliber Beretta with six live rounds, including one in the chamber. Sergeant Koenig pursued the defendant down the stairs and out of the building, where the defendant was detained by two officers who had been waiting on the sidewalk.

¶ 5    The police officers searched the apartment. They found two females who lived in the apartment. They also recovered "three rubber band pink tinted Ziploc baggies of suspect heroin, as well as four clear plastic knotted baggies of suspect crack cocaine, and [$37] on top of the kitchen cabinet."

¶ 6    The police officers then took the defendant to the police station, where Officer Rojas and Officer Piek interrogated him. Both officers testified that the defendant told them he was selling heroin and crack for a guy named "Young Money," who dropped drugs off at the apartment every day at 7 a.m. He also told them that he had been living in the apartment for a couple of months and that the drugs and gun belonged to him and "not the girl that was in the

apartment." The defendant explained that he had the gun because "he didn't want to be robbed or stuck up by someone or a crew."

¶ 7 The parties stipulated that Daniel Bryant, a forensic scientist with the Illinois State Police, would testify that 38 items found by the police in the apartment tested positive for 15.2 grams of heroin and another item tested positive for 0.1 gram of cocaine.

¶ 8 After the State rested, the trial continued with the defendant's testimony. The defendant testified that, on October 19, 2013, he went to retrieve a bus card from his friend, Charita, who lived at the apartment. He arrived at the apartment at 8 a.m. and was there with Charita and her mother for 15 minutes when the police officers came in with guns drawn and masks on. He put his hands up when told to do so by the police. The police officers then put defendant in handcuffs in the living room while they searched the apartment. Two officers emerged from the kitchen and showed the gun and drugs to the defendant, saying "We found your merch." The defendant told the officers that they could put it back in their pockets as that is where they got it from.

¶ 9 The defendant denied that he ever told the police officers that he had a gun for protection, that he sold drugs, or that he worked for someone named "Young Money." He further denied that he ran, threw a gun, or threw any drugs. The defense rested after his testimony.

¶ 10 At the end of the trial, the court stated that it found the officers to be more credible than the defendant. The trial court then found the defendant guilty of armed violence (count I), possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of heroin (count II), and possession of a controlled substance with intent to deliver less than 1 gram of cocaine within 100 feet of a park (count III). In finding the defendant guilty of armed violence, the court stated: "In this situation, the officers saw the defendant with both the drugs and the gun. So he was armed with a gun at the same time that he had the drugs on his possession."

¶ 11 The trial court sentenced the defendant to 15 years' imprisonment on count I, 15 years' imprisonment on count II, and 5 years' imprisonment on count III, with all three sentences to run concurrently. The defendant subsequently filed this notice of appeal.

¶ 12 ANALYSIS

¶ 13 We note that we have jurisdiction to review the trial court's order, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. Dec. 11, 2014).

¶ 14 The defendant now makes four separate arguments: (1) that the State failed to prove him guilty of armed violence beyond a reasonable doubt where there was insufficient evidence that he had immediate access to or timely control over the gun, (2) that, alternatively, this court must vacate his conviction for possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of heroin because it violates the one-act, one-crime rule, (3) that this court should correct the mittimus to clarify that he was sentenced for committing a Class X felony and not, as it currently states, sentenced as a Class X offender, and (4) that his fines and fees order must be corrected to vacate the $5 electronic citation fee and to apply presentence custody credit against the assessed $15 state police operations "fee" and $50 court system "fee," which are actually fines subject to offset. We take each argument in turn.

¶ 15 The defendant first argues that the State failed to prove him guilty of armed violence beyond a reasonable doubt. Relying on *People v. Smith*, 191 Ill. 2d 408 (2000), the defendant

claims that in order to be convicted of armed violence, a defendant must have immediate access or timely control over a weapon at the time he is confronted by police. The defendant argues that he discarded the gun "mere moments" into his flight from the police and before his arrest, and thus, his armed violence conviction is contrary to the purpose of the armed violence statute.

¶ 16 We note that the parties disagree over the standard of review. The defendant claims that because the relevant facts are not in dispute, we must review this issue *de novo*. The State argues that the defendant is challenging the sufficiency of an element of the armed violence conviction, so that we should review the evidence in the light most favorable to the prosecution and ask if any rational trier of fact could have found guilt proven beyond a reasonable doubt. We agree with the State. *De novo* review applies only when the facts are not in dispute and the defendant's guilt is a question of law. *Id.* at 411. While the defendant's brief refers to the State's evidence that he discarded the gun while fleeing from the police, he does not acknowledge that there were disputed facts at trial. Significantly, at trial, the defendant denied that he possessed a gun, possessed drugs, or ran from the police. The defendant's guilt is not a question of law, as he is challenging the sufficiency of the evidence to prove an element of the armed violence conviction, that is, whether he was "armed." Accordingly, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 17 A person commits armed violence when he commits certain felonies, including possession of drugs with intent to deliver, "while armed with a dangerous weapon." 720 ILCS 5/33A-2(a) (West 2012). Our supreme court has emphasized that the statute's purpose is to deter felons from using dangerous weapons, thereby minimizing the deadly consequences that may result when a felony victim resists. *People v. Condon*, 148 Ill. 2d 96, 109 (1992).

¶ 18 We agree with the State that the armed violence statute does not require a defendant to be armed at the time of an arrest. Rather, the plain reading of the statute requires a defendant to be armed during a confrontation with police *or* during the commission of a felony offense.

¶ 19 The defendant's reliance on *Smith* is misplaced. In *Smith*, our supreme court reversed the defendant's conviction for armed violence "because he dropped the gun out of the window as soon as he became aware that police were approaching," and thus "exhibited no propensity to violence." *Smith*, 191 Ill. 2d at 412-13. The court focused on the fact that the defendant did not have " 'immediate access to' " or " 'timely control over' " a weapon when the police entered his building. *Id.* (quoting *Condon*, 148 Ill. 2d at 110). However, there was no evidence, let alone any discussion by the court, that the defendant possessed the weapon during his underlying felony of unlawful possession of a controlled substance.

¶ 20 We find *People v. Harre*, 155 Ill. 2d 392 (1993), to be more instructive regarding resolution of the issue raised by the defendant. There, our supreme court upheld the defendant's armed violence conviction partly because the circumstantial evidence "supported the inference" that the defendant possessed a gun during a drug delivery. *Id.* at 400. The court rejected the defendant's argument that he could not be convicted of armed violence because he abandoned his initial intention to open a car passenger door and grab a gun when he saw the police. *Id.* at 401. The court stated that "the determination of whether a defendant is armed is not made at the moment of arrest. Rather, armed violence occurs if a defendant commits a

felony while having on or about his person a dangerous weapon or if a defendant is otherwise armed." (Emphasis omitted.) *Id.*

¶ 21     This court has previously interpreted the principle culled from *Smith* and *Harre* to be that "a defendant is not guilty of armed violence unless he possesses a weapon at a time when there is the immediate potential for violence, *such as during a drug transaction* or an escalating encounter with the police"; "whether or not the immediate potential for violence exists will depend on the unique facts of each case." (Emphasis added.) *People v. Anderson*, 364 Ill. App. 3d 528, 542 (2006).

¶ 22     We now apply this principle to the case at hand. The police officers testified that they saw the defendant throw the loaded gun and drugs as he ran, that the defendant admitted to selling drugs, and that the defendant told them he carried a gun because "he didn't want to be robbed or stuck up by someone or a crew." Based on this circumstantial evidence, it was reasonable for the trial court to find that the defendant possessed a gun while committing the felony of possessing drugs with the intent to deliver, especially because the trial court found the police officers' testimony to be credible. In his argument before this court, the defendant does not dispute that he possessed a gun while selling drugs. Instead, he focuses his argument solely on his *physical separation from the gun* immediately prior to his arrest. Possessing a gun during a drug transaction presents a potentially violent situation that the armed violence statute is specifically designed to address. Thus, the possession of the gun while possessing drugs with the intent to deliver establishes the defendant's guilt, regardless of how quickly he threw away the gun as he fled from the police. Accordingly, we affirm the defendant's armed violence conviction.

¶ 23     The defendant next argues that, alternatively, this court must vacate his conviction and sentence for possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of heroin. He claims that this conviction arose out of the same physical act as his conviction for armed violence, which violates the one-act, one-crime rule.

¶ 24     The State responds that in 2009, the legislature changed the sentencing statute (730 ILCS 5/5-8-4(d) (West 2012)), creating clear legislative intent to provide for separate convictions for armed violence and possession of a controlled substance with intent to deliver, and so there is no violation of the one-act, one-crime rule.

¶ 25     The defendant acknowledges that he did not preserve this issue, but he contends that it is reviewable under the plain error doctrine. See *People v. Thompson*, 238 Ill. 2d 598, 611 (2010) ("To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion."). The plain error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *Id.* at 613. "We will apply the plain-error doctrine when: (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* "[F]orfeited one-act, one-crime arguments are properly reviewed under the second prong of the plain-error rule because they implicate the integrity of the judicial process." *People v. Nunez*, 236 Ill. 2d 488, 493 (2010).

¶ 26     Under the one-act, one-crime rule, "a defendant may not be convicted of multiple offenses that are based upon precisely the same single physical act." *People v. Johnson*, 237 Ill. 2d 81,

97 (2010). The reviewing court first determines whether the defendant's conduct consisted of a single physical act or separate acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If one physical act was undertaken, then multiple convictions are improper. *Id.* Second, if the defendant committed multiple acts, the court determines whether any of the convictions are for lesser-included offenses. *Id.* Multiple convictions for lesser-included offenses are also impermissible. *Id.* Our supreme court has long held that the predicate offense for another crime is a lesser-included offense of the other crime. *People v. Gillespie*, 2014 IL App (4th) 121146, ¶ 14. The application of the one-act, one-crime rule is a question of law, which we review *de novo*. *Johnson*, 237 Ill. 2d at 97.

¶ 27    Our supreme court said in *People v. Donaldson*, 91 Ill. 2d 164, 168 (1982):

"From [reading the armed violence statute,] it cannot be said that the legislature clearly intended to provide for the imposition of multiple convictions and sentences based on a single act. It is reasonable to say that the legislature intended only to increase or enhance the minimum penalty upon conviction of a felony when the violator was in possession of a dangerous weapon while committing the felony. *** If it were its intention the legislature could have expressly provided for separate convictions and sentences on charges of armed violence and its predicate or underlying felony."

¶ 28    Here, the defendant's armed violence conviction is predicated upon his intent to deliver drugs while armed with a dangerous weapon. This was based on evidence that the defendant possessed a gun while also possessing drugs. He could not have violated the armed violence statute without committing the underlying felony of possessing drugs with the intent to deliver. Thus, the two convictions clearly arise out of the same physical act. See *id.* at 170 (the alleging of a predicate felony in the armed violence charge has the effect, upon conviction, of making it a necessarily included offense). We find that there was an error here because it was improper for the trial court to convict the defendant for possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of heroin, as it was the lesser-included offense of his armed violence conviction.

¶ 29    We now address the State's argument that the legislature did, in fact, change the sentencing statute to create clear legislative intent to provide for separate convictions for armed violence and possession of a controlled substance with intent to deliver even when based on a single act. The State claims that Public Act 95-1052 (eff. July 1, 2009), which was enacted in 2009, clarified "once vague statutes to established judicial interpretations, changing the sentencing provisions regarding concurrent and consecutive terms and providing for where consecutive sentences are mandated." More plainly, the State claims that Public Act 95-1052 amended section 5-8-4(d) of the sentencing statute to mandate consecutive sentences for armed violence and drug trafficking, demonstrating the legislature's intent for separate convictions.

¶ 30    The current language of section 5-8-4(d) of the sentencing statute, which the State relies upon, states, in pertinent part:

"The court shall impose consecutive sentences in each of the following circumstances:

* * *

(3) The defendant was convicted of armed violence based upon the predicate offense of any of the following: *** controlled substance trafficking involving a Class X felony amount of controlled substance under Section 401 of the Illinois

Controlled Substances Act [(720 ILCS 570/401 (West 2012))]." 730 ILCS 5/5-8-4(d) (West 2012).

This language has actually been part of the sentencing statute since 2000. The version enacted on January 1, 2000, stated, in pertinent part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless:

\* \* \*

(iii) the defendant was convicted of armed violence based upon the predicate offense of \*\*\* controlled substance trafficking involving a Class X felony amount of controlled substance under Section 401 of the Illinois Controlled Substances Act (720 ILCS 570/401)." 730 ILCS 5/5-8-4(a) (West 2000).

¶ 31    Clearly, although the wording is slightly different, the effect of the statute is the same today as it was in 2000. Thus, the State is incorrect that this was a "change" enacted by the legislature. Further, as the defendant points out, the sponsor of the bill enacted as Public Act 95-1052, made it clear that the bill was not making any substantive changes to the sentencing statute; rather, the amendment simply rearranged the statute in order to make it easier to understand. See 95th Ill. Gen. Assem., Senate Proceedings, May 24, 2007 (statements of Senator Cullerton) ("This is a bill" that does not make "any substantive changes, but—recodifies [the sentencing provisions] and puts them in a different order.").

¶ 32    Moreover, we disagree with the State that this language "demonstrates the legislative intent was to allow both the armed violence conviction and the underlying felony conviction to remain, and not allow the underlying felony to be vacated." The statute is expressly directed to *sentencing*. It contains nothing to suggest intent to permit multiple *convictions*. The plain reading of the sentencing statute states that when there is an armed violence conviction predicated upon certain enumerated felonies, it triggers mandatory consecutive sentencing, such that any other convictions for which a defendant was sentenced must be served consecutively to the armed violence conviction. This in inapplicable to the defendant's convictions. As we have already explained, his conviction for possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of heroin is invalid because it violates the one-act, one-crime rule.

¶ 33    Interestingly, the defendant does not challenge his conviction for possession of a controlled substance with intent to deliver less than 1 gram of cocaine within 100 feet of a park (count III) under this same rationale. As he does not address it, neither will we. Accordingly, we vacate the defendant's conviction and sentence for possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of heroin. We note, however, that remand for resentencing is unnecessary, as his sentence was imposed to run concurrently with his 15-year sentence for armed violence.

¶ 34    The defendant next argues that this court should correct the mittimus to clarify that he was sentenced for committing a Class X felony and not, as it currently states, sentenced as a Class X offender due to prior convictions. The State concedes this issue. We therefore order the mittimus to be corrected to clarify that the defendant was sentenced for committing a Class X felony and not as a Class X offender.

¶ 35　　　　Finally, the defendant argues that his fines and fees should be corrected. Specifically, he claims that the $5 electronic citation fee was improperly imposed because it does not apply to felonies pursuant to section 27.3e of the Clerks of Courts Act. 705 ILCS 105/27.3e (West 2012). He further claims that the court failed to offset the $15 state police operations fee and $50 court system fee by the 642 days that he spent in presentence custody. The defendant argues that both of these "fees" are actually fines that should be offset by his $3210 in presentence credit. The State concedes that all these fines and fees were improperly assessed, but argues that the defendant has forfeited this argument.

¶ 36　　　　The defendant acknowledges that he has forfeited this argument, but he contends that it is reviewable under the plain error doctrine, or alternatively, that his trial counsel rendered ineffective assistance of counsel for failing to object to the unauthorized fines and fees. However, forfeiture is a limitation on the parties, not the court, and we may exercise our discretion to review an otherwise forfeited issue. *Great American Insurance Co. of New York v. Heneghan Wrecking & Excavating Co.*, 2015 IL App (1st) 133376, ¶ 81 (Gordon, J., specially concurring). Accordingly, we exercise our discretion to consider this issue without resorting to the defendant's arguments on plain error and ineffective assistance of counsel.

¶ 37　　　　A reviewing court may modify a fines and fees order without remanding the matter to the trial court under Illinois Supreme Court Rule 615(b)(1). *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 22. The State concedes that the defendant's fines and fees were improperly assessed, and we agree. Accordingly, we order the fines and fees to be corrected. Specifically, we order the $5 electronic citation fee to be vacated, and the $15 state police operations fee and the $50 court system fee to be offset by the defendant's $3210 in presentence credit. Therefore, we direct the clerk of the circuit court to correct the fines and fees order to reflect a total assessment of $679 against the defendant.

¶ 38　　　　　　　　　　　　　　　　　CONCLUSION

¶ 39　　　　For the foregoing reasons, we affirm the defendant's conviction for counts I and III, we vacate the defendant's conviction and sentence for count II, we order the mittimus to be corrected to clarify that the defendant was sentenced for committing a Class X felony and not as a Class X offender, and we order the fines and fees order be corrected to reflect a total assessment of $679 against the defendant.

¶ 40　　　　Affirmed in part, vacated in part, and mittimus corrected; fines and fees order corrected.