NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231083-U

NOS. 4-23-1083, 4-23-1084, 4-23-1085 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 10, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DEWAYNE STEWART, | ) | Nos. 22CF2715 |
| Defendant-Appellant. | ) | 22CF2729 |
| | ) | 23CF38 |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer J. Clifford, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant did not prove the trial court erred in denying him pretrial release.

¶ 2    Defendant, Dewayne Stewart, appeals the trial court's order denying him pretrial release under article 110 of the of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art.110 (West 2022)), which was recently amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). Pub Act 101-652, § 10-255 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (resetting the effective date of the Act to September 18, 2023). We affirm.

¶ 3    I. BACKGROUND

¶ 4    This appeal involves three separate cases consolidated for appeal. In Winnebago

County case No. 22-CF-2715, the State charged defendant with the November 4, 2022, aggravated domestic battery/strangulation (720 ILCS 5/12-3.3(a-5) (West 2022)) and domestic battery (*id.* § 12-3.2(a)(2)) of Alecia Yance and domestic battery of Mahogany Yance (*id.* § 12-3(a)(2)) (appellate court case No. 4-23-1084). In Winnebago County case No. 22-CF-2729, the State charged defendant with the November 5, 2022, aggravated domestic battery/strangulation (*id.* § 12-3.3(a-5)) and domestic battery (*id.* § 12-3.2(a)(2)) of Jacarrah Sanders (appellate court case No. 4-23-1083). In Winnebago County case No. 23-CF-38, the State charged defendant with the December 22, 2022, harassment by telephone of Sanders (*id.* § 26.5-2(a)(2)), asserting defendant intended to threaten to kill Sanders or a member of her family or household, and the aggravated (*id.* § 12-3.05(c)) and domestic battery of Sanders (*id.* § 12-3.2(a)(2)) (appellate court case No. 4-23-1085).

¶ 5 In April 2023, defendant first appeared in custody on the three cases. Bail was set at $500,000. Defendant remained in custody.

¶ 6 On October 10, 2023, defendant filed a motion for reconsideration of his pretrial release conditions. One of the pretrial release conditions defendant sought to change was cash bail. Defendant asked the trial court to release him with the condition he attend inpatient substance-abuse treatment at Rosecrance in Champaign, Illinois, where a bed would be available the next day.

¶ 7 On October 11, 2023, the trial court held a hearing on defendant's motion, at which the State objected to defendant's pretrial release. At this hearing, defense counsel emphasized defendant had been in custody since April and defendant had asked for assistance getting him into treatment since that time. Defense counsel stated defendant was found ineligible for drug court as he had to register as a sex offender due to a juvenile case. Since that time,

defense counsel obtained a referral for Rosecrance to meet with defendant and a treatment bed at that facility was available. Defense counsel argued conditions were available to mitigate the real and present threat to the victims in the cases and the community as defendant would be in an inpatient treatment facility. Defense counsel emphasized defendant would abide by conditions such as "pretrial monitor[ing] that he's there, that reports are sent back to me and/or the Court," and conditions of places defendant cannot go and people he cannot contact. When the court asked how defendant would get to Rosecrance, defense counsel pointed to a woman in the courtroom and identified her by name and as a friend of defendant.

¶ 8    Upon permission from the trial court, the State made proffers to support its objection to defendant's motion. The State relayed the following information about the three cases involved in this consolidated appeal:

"So relating to [case No. 22-CF-2715], the State would proffer that on November 4th of last year in the afternoon, officers responded to the Gas Depot on South 6th Street in reference to a domestic battery that occurred on 8th Avenue.

Upon arrival, they spoke with Alicia Yance. Alicia stated she had a baby approximately five days prior to that date. She stated that her ex-boyfriend, [defendant], had been threatening to hurt her since she had her baby. She said he'd been upset since his girlfriend passed away a few months ago. She *** told [defendant] to stay away from her baby. Alicia stated that [defendant] got upset by her saying that and began striking her 10 to 20 times in the head, arms and chest with a closed fist. She *** attempted to get

- 3 -

up the stairs, but [defendant] then grabbed her by the front of the neck with one hand and strangled her. She stated she did not lose consciousness, but her breathing was restricted while [defendant] was strangling her.

Alicia stated that her sister, Mahogany Yance, came and interrupted the fight. She said that [defendant] then muffed Mahogany in the face. Alicia said [defendant] then left. Officer Roman went and met with the sister ***. She stated she heard them fighting. She said she was upstairs and looked down the backstairs where she saw [defendant] strike Alicia more than 10 times in her face and head and pulled her hair. Mahogany said she interrupted the fight and attempted to push [defendant] off of Alicia. She said that she too said that [defendant] then muffed her in the face, then took her phone out of her hand ***.

Related to [case No. 22-CF-2729,] on November 5th, the next day, 2022, at around noon, Rockford officers responded *** regarding a report of threatening phone calls to Jacarrah Sanders from [defendant].

Upon arrival, Jacarrah was on speakerphone with [defendant]. Officers overheard [defendant] yelling into the phone, making threatening statements such as, can't nobody save you from me. Your residence in Orton Keys is over[. After] Jacarrah asked him what he was getting lighter fluid for and I bet your shit

be on fire today.

[Defendant] called Jacarrah a couple of times while officers were present to yell and threaten her. [Defendant] also sent Jacarrah a picture of lighter fluid next to him in his vehicle. Jacarrah advised their dispute was ongoing for a few days prior to that, when [defendant] found a gun belonging to another male in her residence and took it for himself. Jacarrah advised [defendant] started the argument again when he was with her that morning by accusing her of cheating on him. She said he struck her once with an open hand on the right side of her face. Jacarrah advised that [defendant] also placed one hand around her neck for less than a minute, which restricted her breathing. She said he also threatened to kill her and her baby. Jacarrah advised that she and [defendant] had been dating since the prior summer.

* * *

On December 21st, 2022 in the afternoon, Rockford Police responded to the [residence] of Jacarrah Sanders ***. There they spoke with her. She explained that she went to the store with her stepfather, Roderick Mack. She said while she was at the store, her friend Marquia Booker, who was still at [Jacarrah's] house ***, called her. She said that her ex boyfriend, [defendant], then got on the phone and threatened to shoot her. Jacarrah said that she then went home and [defendant] came out from the house and

approached her car from the passenger side. She said he grabbed his right hip like he had a gun and spit in her face.

Officers spoke with Roderick Mack, who stated he picked up Jacarrah and took her to the store. Roderick said when they arrived back home, [defendant] exited the house and approached the vehicle. Roderick said [defendant] threatened to shoot Jacarrah and lifted his shirt and exposed a black handgun. *** Roderick advised that [defendant] spit on Jacarrah. Officers also spoke with Marquia Booker, who advised that she was at that address when the defendant came inside unannounced through an unlocked back door. She advised that the defendant pulled a black handgun out and asked where Jacarrah was. Marquia indicated that she called Jacarrah and [defendant] spoke to her over the phone and she heard him threaten to kill her."

¶ 9        The State further informed the trial court of an April 2023 traffic stop in which defendant was found with nearly 30 grams of suspected cannabis, over 1 gram of suspected cocaine, and ecstasy. Defendant admitted the drugs were his.

¶ 10        The State then argued there were no conditions that would mitigate or prevent defendant's pattern of behavior from continuing. The State emphasized the multiple victims of domestic violence and defendant's access to weapons, as well as his entering the home of another with no invitation.

¶ 11        At the close of the hearing, the trial court denied defendant's motion and ordered defendant detained. The court found the offenses in the cases were detainable offenses. The court

stressed the existence of independent witnesses to the offenses and found by clear and convincing evidence the proof was evident the charged crimes occurred. The court further found the dangerousness standard satisfied by clear and convincing evidence, as the evidence showed defendant posed a real and present threat not only to those with whom he had romantic relationships but also those who sought to intercede. The court further found, by clear and convincing evidence, no conditions or combination of conditions could mitigate the real and present threat. The court stated the following:

> "I mean, I'm a big proponent of treatment, but I have no idea who's taking him. It's not a secure facility. There's been nothing that's shown to me that there would be any monitoring of them except that I just let him out and then who knows what happens. I don't know who this person is. The defense hasn't put on any information. So all I have is that somebody who is assessed in the Pretrial Services Risk Assessment is in extremely high risk. And then on the Domestic Violence Screening Instrument is assessed as a 19 on a scale that goes from zero to 30, with 11 considered a high risk, you are a 19. These allegations are serious. They are violent. They indicate threats of serious harm, they indicate possible having a handgun, *** using weapons in a threatening way. And then the request is I just let him out with somebody who's going to maybe take him to Champaign, maybe not, to get into treatment.

> * * *

> And he's not on probation. He's not on any sort of

monitoring system. Even if I had him reporting to pretrial, the plan is to have him gone in Champaign, which is a great distance from here, if he even goes there and this litany of one, two, five different alleged charges over an extremely long period of time. Perhaps if there was a better plan or a more reasonable plan, perhaps if he were on, I don't know, some way to be monitored, but there is no way to monitor. But some random person is here and says, oh yeah, I'm going to take them. And you've done these motions in front of me, and you've presented people before [defense counsel], and you chose not to. I don't know if this person's been disclosed to the State, if they've talked to this person. I don't have anything from Rosecrance. And it's not a locked facility. And as we know, people can just leave from there. And then what?

And with this huge number of offenses—and I'm really racking my brain trying to think of what conditions that I could put that would mitigate the risk, but he is a risk. These allegations are serious. They are extraordinarily dangerous.

So with evidence that I've been presented today, I'm not going to release him."

¶ 12    On October 18, 2023, defendant filed a notice of appeal in this case as well as a supporting memorandum under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023). Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Sept. 18, 2023)), by which he asks

this court to reverse the order denying pretrial release. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." Defendant checked four grounds for relief. Under only one, defendant listed details. The first ground for relief checked by defendant is the State failed to meet its burden of proving by clear and convincing evidence the proof is evident or the presumption great defendant committed the offenses charged. No detail or argument is provided on the preprinted lines under this text. The second ground for relief checked by defendant is the State failed to meet its burden of proving by clear and convincing evidence defendant poses a real and present threat to the safety of any person or persons or the community. No detail or argument is provided under this ground. The third ground for relief checked by defendant is the State failed to meet its burden of proving by clear and convincing evidence no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community. The fourth ground for relief checked by defendant is he was denied the opportunity for a fair hearing. Under this preprinted text, defendant provided the following: "The defense believes despite presenting conditions that would mitigate the real and present threat to the safety of persons or the community, including the Defendant participating in an inpatient substance abuse program, the burden of proof was improperly shifted from the State to the Defendant."

¶ 13        In his Rule 604(h) memorandum, defendant raised a fifth argument not presented in his notice of appeal: he was denied the effective assistance of counsel when defense counsel failed to object to the State's ability to object to his pretrial release due to the untimeliness of the request.

¶ 14        This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16        We begin by addressing the procedural flaw in defendant's appeal. Defendant has forfeited the argument raised in the memorandum but not raised in the notice of appeal. Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023) ("The Notice of Appeal shall describe the relief requested and the grounds for the relief requested."); see *People v. Martin*, 2023 IL App (4th) 230826, ¶¶ 18-19. While forfeiture is not a limitation on this court's discretionary ability to review an otherwise forfeited issue (*People v. Curry*, 2018 IL App (1st) 152616, ¶ 36), we decline to excuse defendant's forfeiture here. Accordingly, we will not address defendant's claim that he raised solely in his memorandum.

¶ 17        We turn next to the arguments defendant raised in his notice of appeal.

¶ 18        Under the Code, all criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West Supp. 2023). When seeking a denial of pretrial release based on defendant's alleged dangerousness, the State must prove by clear and convincing evidence the following: (1) the proof is evident or the presumption great the defendant committed a detainable offense, (2) the defendant poses a threat to the safety of the community or any person in the community, and (3) no combination of conditions can mitigate the threat to the safety of the community. *Id.* §§ 110-6.1(a), (e)(1)-(3). By checking boxes on the notice-of-appeal form, defendant, without additional detail or argument, argued the State did not meet its burden of proving all three of these prerequisites.

¶ 19        Defendant has failed to convince this court the trial court erred in denying him pretrial release. As the appellant, defendant carries the burden of proving trial-court error. See, *e.g.*, *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44. This burden cannot be satisfied by a simple checking of a box on a form notice of appeal next to boilerplate language taken directly from the Code. Defendant has failed to point to

- 10 -

any specific facts or make an argument supporting these grounds of relief and has, therefore, not met his burden of proving error on these grounds.

¶ 20        Defendant's remaining argument is he was denied an opportunity for a fair hearing before the denial of his pretrial release. Defendant argues the trial court improperly shifted the burden of proof from the State to him on the issue of conditions that would mitigate the real and present threat to the safety of persons or the community. Defendant argued he presented conditions that would mitigate such a threat, such as his participation in an inpatient substance-abuse program.

¶ 21        Our review of the record reveals no trial-court error. As shown above, the State bears the burden of showing no conditions or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. See 725 ILCS 5/110-6.1(e)(3) (West 2022). The trial court did not place the burden on defendant to prove the condition of inpatient treatment would mitigate the threat defendant's release would impose. Defendant presented the condition in support of his petition for pretrial release, and the court pointed out the flaws in that recommendation and rejected it. In turn, the State met its burden. The charges against defendant, for which the proof is evident or the presumption great the defendant committed those detainable offenses, demonstrate the threat is real and imminent and not mitigated by any condition or combination of conditions for relief. Defendant engaged in conduct that endangered the lives of his victims, defendant was armed with a weapon, and defendant repeatedly threatened the life of one of the victims, stating, "[C]an't nobody save you from me." Unmonitored inpatient treatment in Champaign, Illinois, would not mitigate this threat to Jacarrah, other persons, or the community.

¶ 22                        III. CONCLUSION

¶ 23        We affirm the trial court's judgment.

¶ 24        Affirmed.