NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231527-U

NO. 4-23-1527

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 1, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| JESSICA GRAFTON, | ) | No. 23CF1195 |
|     Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Christopher G. Perrin, |
| | ) | Judge Presiding. |

_____

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the circuit court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Jessica Grafton, appeals the circuit court's order denying her pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52, 223 N.E.3d 1010 (setting the Act's effective date as September 18, 2023).

¶ 3    On appeal, defendant argues this court should overturn the circuit court's decision because the State failed to meet its burden of proving by clear and convincing evidence she poses

a real and present threat to the safety of any person or the community and no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5             On December 12, 2023, the State charged defendant with two counts of aggravated battery (720 ILCS 5/12-3.05(a)(1)-(2) (West 2022)), one count of kidnapping (720 ILCS 5/10-1(a)(2) (West 2022)), and one count of unlawful restraint (720 ILCS 5/10-3 (West 2022)).

¶ 6             The next day, the State filed a verified petition to deny defendant pretrial release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged defendant was charged with qualifying offenses, and defendant's pretrial release posed a real and present threat to the safety of persons or the community (725 ILCS 5/110-6.1(a)(1.5) (West 2022)). In support of its petition, the State provided the following factual basis:

          "On 12-02-2023 at 1016hrs, Deputies with the Sangamon County Sheriff's
          Office was [*sic*] dispatched [to] 11805 Bell Fountain Rd. for a well-fare [*sic*]
          check. Deputies made contact with Tracy Chapman *** who was battered and
          covered in bleach. The location Tracy was located was approximately a 15 to 20
          minute drive outside of Springfield on a rural country road.

          Tracy advised she was at 730 Black Ave. in Springfield, IL[,] when she
          was punched in the mouth by Angela Gonzalez and [defendant]. After being
          battered[,] Tracy was forced down into the basement where Gonzalez and
          [defendant] made her strip completely naked. Tracy was then able to put her pants
          and t-shirt back on before Gonzalez and [defendant] placed duct tape over her

- 2 -

mouth, tied her hands up with yellow rope[,] and tied yellow rope around her neck. Gonzalez and [defendant] then dragged Tracy up the stairs by the rope around her neck and out the back door of the residence. In the drive way was a Black Dodge Charger backed up with the trunk open. Tracy stated she began to plea with Gonzaez and [defendant] to not put her in the trunk. The females then forced her in the back seat of the [C]harger with her face down towards the floor board. [Defendant] then got in the back seat of the Charger and placed a jacket over [Tracy's] head and held her down. Gonzalez then got in the driver seat and drove off from the residence. Tracy advised that approximately 15 minutes later the car stopped at a location and Gonzalez got out for a few minutes before returning. Tracy advised that when Gonzalez got back into the driver's seat she could hear the sound of a plastic bag and believed this was when Gonzalez picked up the bottle of bleach. Gonzalez then began to drive again until reaching the location where she was found. Upon arriving at that location, [defendant] got out of the back seat and Gonzalez leaned in and removed the jacket from over [Tracy's] face. At that time[,] Gonzalez had what Tracy described as being a gray semi auto handgun. Gonzalez then placed the gun next to Tracy's head telling her she will be killed if she says anything about what has occurred and then struck [Tracy] in the head with the gun. Gonzalez then pulls her out of the vehicle where [defendant] helps untie her. Tracy is then pushed to the ground and Gonzalez opens a bottle of bleach and pours it all over her. Gonzalez and [defendant] then get back into the Charger, fleeing the scene and leave Tracy lying there.

CCTV video was located in the area of 730 Black Ave that captured part of the incident. *** On the video you can see the black Charger back up in the driveway of 730 Black Ave with the trunk open. You are also able to see Tracy with her hands bound together in between Gonzalez and [defendant] as they pull her towards the black Charger. Gonzalez and [defendant] can be seen physically pushing Tracy into the back seat of the Charger through the rear passenger door. [Defendant] then gets in to the back seat with Tracy. Gonzalez walks around the rear of the vehicle, closing the trunk before entering the driver's seat."

The State's factual summary further provided defendant was serving a term of probation for forgery in Sangamon County case No. 22-CF-365 at the time of the instant offenses.

¶ 7 At the December 14, 2023, detention hearing, The State proffered what evidence would be presented. This proffer was consistent with the factual basis for the State's verified petition. The State further informed the circuit court Gonzalez "implicated *** [defendant] as being with her," and another individual "witnessed Ms. Gonzalez and *** defendant batter the victim." According to the State, defendant's actions spoke "very clearly about the dangerousness," and considering the conduct involved, the State argued defendant posed "a clear and serious danger or threat" to the victim. The State reasoned detention was the least restrictive condition to ensure the victim's safety because defendant was accused of having committed the offenses while on probation, which was "indicative that [defendant], if released on conditions of pretrial release, would violate the order."

¶ 8 Defense counsel asserted there was no evidence defendant "did any of the violent acts like Ms. Gonzalez" and noted defendant had "very little criminal history." Counsel also noted defendant was "a 32-year-old who has an 8th-grade education." If released, defendant

- 4 -

would reside with her fiancé and "would be more than amenable to a drug and alcohol evaluation and treatment as well as a mental health evaluation and treatment."

¶ 9 In determining whether defendant should be released from pretrial detention, the circuit court considered the nature of the offense, the State's proffer, and "the current condition, medical condition of the victim." And while the court recognized defendant's lack of criminal history, it noted "the allegations in this case are troubling and chilling and significant." Ultimately, the court granted the State's petition, finding the State "carried its burden by clear and convincing evidence that the defendant poses a substantial threat to the public. The proof is evident and the presumption is great that the defendant did commit a detainable offense, and I can see no conditions that would mitigate any danger."

¶ 10 The circuit court then entered a written order denying pretrial release, finding (1) defendant was charged with a detainable offense and the proof was evident or the presumption great that defendant committed the offenses, (2) defendant posed a real and present threat to the safety of any person or the community, and (3) no conditions or combination of conditions could mitigate the real and present threat. The court also found pretrial release should be denied based on the nature and circumstances of the offenses charged, the nature of the threat and the identity of the victim whose safety defendant threatened, the age and physical condition of the victim, and because defendant was known to possess or have access to weapons. After the court entered its written order summarizing its reasons for denying pretrial release, defendant filed her notice of appeal under Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Dec. 7, 2023).

¶ 11 This appeal followed.

¶ 12 II. ANALYSIS

- 5 -

¶ 13    Defendant's notice of appeal indicates the following relevant bases for vacating the circuit court's detention order: (1) the State failed to prove by clear and convincing evidence defendant poses a real and present threat to the safety of any person or the community and (2) the State failed to prove by clear and convincing evidence no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community. The Office of the State Appellate Defender, defendant's appointed counsel on appeal, filed a supporting memorandum laying out the reasons for reversing the court's decision. The memorandum also raised a third argument not presented in defendant's notice of appeal: the court abused its discretion because it failed to provide oral or written findings as to why there were no conditions of release that would mitigate defendant's dangerousness.

¶ 14    Initially, we note defendant has forfeited the argument raised in the memorandum but not raised in the notice of appeal. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023) ("The Notice of Appeal shall describe the relief requested and the grounds for the relief requested."); see *People v. Martin*, 2023 IL App (4th) 230826, ¶¶ 18-19. While forfeiture is not a limitation on this court's discretionary ability to review an otherwise forfeited issue (*People v. Curry*, 2018 IL App (1st) 152616, ¶ 36, 100 N.E.3d 482), we decline to excuse defendant's forfeiture here. Thus, we will not address defendant's claim that she raised solely in her memorandum, and we turn next to the arguments defendant raised in her notice of appeal.

¶ 15    All criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Before denying pretrial release, the State must prove by clear and convincing evidence (1) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" and (2) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this

Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Section 110-6.1 of the Code instructs the circuit court to consider "the specific articulable facts of the case" and provides nine factors the court may consider when assessing the real and present threat allegation. See 725 ILCS 5/110-6.1(g)(1)-(9) (West 2022). If the court determines the defendant should be denied pretrial release, the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid the danger posed by the defendant to any person or the community. 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 16 We have held the determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Likewise, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44, 123 N.E.3d 393.

¶ 17 Here, defendant has not shown how the circuit court abused its discretion in finding the State established by clear and convincing evidence she posed a real and present threat to the safety of the community and that no condition or combination thereof could mitigate the danger she posed. The record demonstrates the court weighed the statutory factors and found the State "carried its burden by clear and convincing evidence that the defendant poses a substantial

threat to the public. The proof is evident and the presumption is great that the defendant did commit a detainable offense, and I can see no conditions that would mitigate any danger." In reaching its decision, the court considered the nature of the threat and the identity of the victim whose safety defendant threatened (725 ILCS 5/110-6.1(g)(3) (West 2022)), the age and physical condition of the victim (725 ILCS 5/110-6.1(g)(6) (West 2022)), and that defendant was known to possess or have access to weapons (725 ILCS 5/110-6.1(g)(7) (West 2022)). And while the court recognized defendant's lack of criminal history (725 ILCS 5/110-6.1(g)(2) (West 2022)), the State pointed out defendant was serving a term of probation at the time of the instant offenses. 725 ILCS 5/110-6.1(g)(8) (West 2022). The court also considered the nature and circumstances of the offenses charged (725 ILCS 5/110-6.1(g)(1) (West 2022)), noting, "the allegations in this case are troubling and chilling and significant." In fact, defendant acknowledges in her Rule 604(h) memorandum "that the allegations in the case at hand are very serious," and "there is a legitimate concern about the dangerousness that [she] may pose to both Chapman and society."

¶ 18        Moreover, the record contains ample evidence supporting the circuit court's conclusion. According to the State's proffer, on December 2, 2023, Sangamon County Sheriff's deputies found Tracy Chapman battered and covered in bleach at 11805 Bell Fountain Road, approximately 15-20 minutes away from Springfield, Illinois. Tracy told the deputies she was at 730 Black Avenue in Springfield, where she was punched in the mouth by Gonzalez and defendant. Defendant and Gonzalez then forced Tracy to the basement, where they made her strip naked. Defendant and Gonzalez eventually allowed Tracy to put her pants and shirt back on before Gonzalez and defendant duct taped Tracy's mouth, tied her hands up with yellow rope, and tied yellow rope around her neck. Gonzalez and defendant then dragged Tracy up the stairs

and out the back door of the residence by the rope around her neck. There was a Black Dodge Charger backed up with the trunk open in the driveway. After Tracy pleaded with Gonzalez and defendant to not put her in the trunk, the duo forced Tracy into the back seat of the Charger with her face down towards the floorboard. Defendant got into the back seat of the Charger, covered Tracy's head with a jacket, and held her down. Gonzalez then got into the driver's seat and drove away from the residence.

¶ 19        Approximately 15 minutes later, Gonzalez stopped the car and got out for a few minutes. When Gonzalez returned, Tracy could hear the sound of a plastic bag and believed this was where Gonzalez picked up the bottle of bleach. Gonzalez began driving again until the three women arrived at the location where Tracy was found. After Gonzalez stopped the car, defendant got out, and Gonzalez leaned in and removed the jacket from Tracy's head. Tracy observed Gonzalez holding a gray semiautomatic handgun. Gonzalez placed the gun next to Tracy's head and told her she would be killed if she said anything about what had occurred. Gonzalez then struck Tracy in the head with the gun and pulled Tracy out of the vehicle, and defendant assisted with untying her. Tracy told officers she was then pushed to the ground, and Gonzalez poured the bottle of bleach all over her. Gonzalez and defendant got back into the Charger and left Tracy lying there.

¶ 20        Further, video taken from surveillance cameras located in the area of 730 Black Avenue captured part of the incident. According to the State, the video showed the black Charger back up into the driveway of the residence at 730 Black Avenue with its trunk open. The video also showed Tracy with her hands tied in between Gonzalez and defendant as they pulled her to the vehicle. The video showed defendant and Gonzalez pushing Tracy into the back seat of the car through the rear passenger door. Defendant can then be seen getting into the back seat with

Tracy, and the video showed Gonzalez walking around the rear of the vehicle, closing the trunk, and entering the driver's seat.

¶ 21   Against the backdrop of "troubling and chilling and significant" evidence of extremely dangerous criminal behavior committed while on felony probation, defendant claims her assertion of "very little criminal history," a fiancé, untreated mental health issues—for which she is now willing to seek treatment—and her promise to stay away from the victim are enough to overcome the State's evidence and warrant her release. A criminal defendant's promise at a detention hearing to do better is not likely to be given much weight by any experienced circuit court judge.

¶ 22   Overall, the record supports the circuit court's determination the State showed by clear and convincing evidence defendant posed a real and present threat to the safety of any person or the community and that no condition or combination thereof could mitigate the threat defendant posed based on (1) the nature and circumstances of the offenses charged, (2) defendant's lack of criminal history, (3) the nature of the threat and the identity of the victim whose safety defendant threatened, (4) the age and physical condition of the victim, and (5) that defendant was known to possess or have access to weapons. See 725 ILCS 5/110-6.1(g)(1)-(3), (6)-(7) (West 2022). Thus, the decision was not arbitrary, fanciful, or unreasonable. There was no abuse of discretion. *Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 23                    III. CONCLUSION

¶ 24   For all these reasons, we affirm the circuit court's judgment.

¶ 25   Affirmed.