NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231495-U

NO. 4-23-1495

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 1, 2024
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JAIYLEN PLATO, | ) | No. 23CF854 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robin L. Schmidt, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the circuit court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Jaiylen Plato, appeals the circuit court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52, 223 N.E.3d 1010 (setting the Act's effective date as September 18, 2023).

¶ 3    On appeal, defendant argues this court should overturn the circuit court's decision because the State failed to meet its burden of proving by clear and convincing evidence

defendant poses a real and present threat to the safety of any person or the community and no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community. Defendant further argues the court erred in its determination that less restrictive conditions would not avoid the real and present threat defendant posed to the safety of any person or the community. We affirm.

¶ 4                                  I. BACKGROUND

¶ 5        On September 13, 2023, the State charged defendant with five counts of possessing a firearm without a firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2022)) and one count of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2022)). That same day, the circuit court set defendant's bond at $300,000, requiring a deposit of 10%. Defendant did not post bond and remained in detention.

¶ 6        On November 7, 2023, defendant filed a motion for a hearing pursuant to section 110-7.5 of the Code (725 ILCS 5/110-7.5 (West 2022)), calling for the circuit court "to reopen the determination of pretrial conditions because the Defendant is in custody due to [his] inability to meet a condition of release." The next day, the State filed a verified petition to deny defendant pretrial release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged defendant was charged with qualifying offenses and defendant's pretrial release posed a real and present threat to the safety of persons or the community (725 ILCS 5/110-6.1(a)(1), (6)(O) (West 2022)). The State, relying on a probable cause statement, provided the following factual basis in support of its petition. That statement showed that on September 9, 2023, "Street Crimes Unit Officers" viewed several videos defendant had uploaded to his Facebook profile. The officers were familiar with defendant and knew his Facebook profile's web address. The profile features numerous photos of defendant.

¶ 7            Officer Justin Spaid of the Springfield Police Department observed defendant had uploaded a video to his Facebook story at around 11:30 p.m. on September 7, 2023, recording himself and clearly showing his own face. In the video, defendant pointed a black semiautomatic handgun at the camera. It was clear from the barrel the gun was real. Defendant then removed an extended-capacity magazine from the handgun. Based on his training and experience, Officer Spaid concluded the magazine appeared to be a "31[-]round capacity magazine." Defendant showed the live ammunition loaded in the magazine to the camera. During the video, defendant said, " 'Fake what? Real yeah. Stop playing. Real, real, real Duckie gang. I'm really that face.' "

¶ 8            Around 6:30 p.m. the next day, defendant uploaded another video to his Facebook story. The video showed his face and showed him holding a semiautomatic handgun with an attached flashlight and blue/green laser. Defendant pointed the handgun at the camera with the flashlight and lasers activated. He then immediately uploaded another video, in which he picked up an "AK47[-]type pistol" lying next to him. The pistol had a translucent drum magazine "showing live ammunition inside it." Defendant also pointed the pistol at the camera, revealing a barrel that appeared to be real, and talked about the bullets going through walls.

¶ 9            Around 11 p.m. that night, defendant posted another video to his Facebook story. The video was taken from the perspective of whoever was recording, and defendant could be heard narrating and talking about the pistol. What appeared to be defendant's hand could be seen holding the same "AK47[-]type pistol" with the attached flashlight and laser.

¶ 10           Around 9:30 a.m. on September 9, 2023, defendant uploaded another video to his Facebook story. The video was captioned, " 'We up early morning Wtw what y'all wnana [*sic*] get hit wit [*sic*] this 33 clip or drac or chop.' " The video showed defendant's face again as he held up the handgun with the extended-capacity magazine. An immediate follow-up video,

which was "recorded in darkness," showed defendant pointing the "AK47[-]type pistol" at the camera with the lasers activated. Defendant mimicked the sound of gunfire and said something difficult to understand, but he could be heard talking about " 'last night' " and said, " 'stole on y'all.' " The probable cause statement indicated the phrase " 'Stole on y'all' " was street slang for attacking or shooting at someone.

¶ 11    Defendant also uploaded a video of himself riding in the backseat of a gray Buick Regal with the license plate number " 'EF62654' " while armed with the semiautomatic handgun with an extended magazine. A gray Buick sedan was described as a suspect vehicle in a shots-fired incident at "17th/Stuart" in Springfield, Illinois. The gunshots were detected by ShotSpotter, a gunfire locator service, as well as witnesses. The Buick was seen fleeing "south on S. Martin Luther King Jr. Dr. from Stuart Street," and seen approximately one block away heading "southbound at S. Martin Luther King Jr. Dr. and Brown Street" several seconds after the gunshots were detected. Nine-millimeter bullet casings were found at the scene. The Buick was then found parked at "1825 Wirt Avenue," and police obtained a search warrant for that address. Defendant was on the front porch when the officers executed the warrant but retreated inside upon their arrival.

¶ 12    Police found a loaded "Ruger AR-556" semi-automatic rifle with an attached drum magazine underneath a piece of carpet on the front porch near where defendant had been standing. Police also found a loaded "Pioneer Arms 7.62 x 39mm AK47 pistol," which was "obviously the same pistol" from defendant's uploaded videos, loaded with approximately 72 live rounds. Inside the house, police found a "9mm Canik TP9V" semiautomatic handgun loaded with a round in the chamber alongside another loaded extended magazine on the couch. Police confirmed the videos defendant uploaded to his Facebook story were taken inside the residence.

A "LEADS" check confirmed defendant did not possess a FOID card and defendant was ineligible for a FOID card based on his juvenile adjudications for robbery and aggravated battery.

¶ 13 At the November 28, 2023, detention hearing, defense counsel argued defendant was not dangerous and "suggest[ed] that [defendant] is a young kid who did some stupid, stupid things with social media." And while counsel acknowledged defendant recorded himself brandishing weapons, making "a generalized threat to an entity known as the Ducky Gang," and using "some sort of street slang implying that he might have been involved in some sort of violent altercation," counsel noted defendant did not threaten a specific person. Instead, it was "a generalized sense of threat," and counsel believed the videos defendant posted of himself to Facebook were "just him talking about him being real, whatever that means." Counsel urged the circuit court to consider electronic monitoring and asserted defendant "wouldn't be opposed to [the court] telling him he couldn't engage in social media as a term of release."

¶ 14 The State noted the "very serious nature of these offenses" and countered defendant was not just a kid "doing stupid things." Rather, defendant was an adult "playing with guns, threatening other people in the community." The State also highlighted defendant's prior juvenile adjudications for aggravated battery and robbery and argued "the videos that this [defendant] posted on social media to let people know he was tough and that he was armed with real firearms *** show[ed] his willingness to use those firearms."

¶ 15 In determining whether defendant should be released from pretrial detention, the circuit court recognized the State's burden to show, by clear and convincing evidence, "that [defendant] pose[s] a real and present threat to the safety of any person or persons in the community *** and that no condition can mitigate this in the community." The court then

pointed out defendant's criminal record included crimes of violence and the present offenses involved weapons. Although defendant was 19 years old, the court disagreed with defense counsel's assertion the statements defendant made on camera were just things "a kid would say or do [o]n social media." The court stated, "[T]hese were real guns ***. They are identified by the police as real weapons." After considering the nature and circumstances of the offenses, defendant's prior criminal history, the nature of the threat defendant posed to the community, the statements made or attributed to defendant, together with the circumstances surrounding them, and defendant's age and physical condition, the court granted the State's verified petition. In doing so, the court concluded there were no less restrictive conditions that would mitigate the real and present danger defendant posed to the community and remarked it had not "really heard any evidence of that today that would make me feel secure in the community releasing [defendant] today."

¶ 16    After the circuit court entered its written order summarizing its reasons for denying pretrial release, defendant filed his notice of appeal under Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Dec. 7, 2023).

¶ 17    This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19    On December 12, 2023, defendant filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023). Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which he requests pretrial release with conditions. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and

describe in detail." Defendant checked three grounds for relief and wrote sentences on the preprinted lines to support his claims.

¶ 20    The first ground for relief defendant checked alleged the following: "The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." On the preprinted lines, defendant asserted he was "accused of live streaming himself on social media while brandishing guns. He made no threat to any specific person or group of people."

¶ 21    The second ground for relief checked by defendant asserts the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat defendant posed to the safety of any person or the community, based on the facts of the case. Defendant explained, "See previous comments. The State failed to present any evidence that electronic monitoring through court services wouldn't prevent any risk of flight."

¶ 22    Finally, based on the "above comments," the third ground for relief defendant checked asserted the circuit court "erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor."

¶ 23    The Office of the State Appellate Defender, defendant's appointed counsel on appeal, filed a supporting memorandum laying out the reasons for reversing the court's decision. Defendant's memorandum also raised a fourth argument not presented in defendant's notice of appeal: the circuit court abused its discretion when it detained defendant because it "failed to

directly address any possible conditions of release orally or in its written order," and thereby failed to comply with section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)).

¶ 24 Initially, we note defendant has forfeited the argument raised in the memorandum but not raised in the notice of appeal. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023) ("The Notice of Appeal shall describe the relief requested and the grounds for the relief requested."); see *People v. Martin*, 2023 IL App (4th) 230826, ¶¶ 18-19. While forfeiture is not a limitation on this court's discretionary ability to review an otherwise forfeited issue (*People v. Curry*, 2018 IL App (1st) 152616, ¶ 36, 100 N.E.3d 482), we decline to excuse defendant's forfeiture here. Thus, we will not address defendant's claim that he raised solely in his memorandum, and we turn next to the arguments defendant raised in his notice of appeal.

¶ 25 All criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Before denying pretrial release, the State must prove by clear and convincing evidence (1) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" and (2) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Section 110-6.1 of the Code instructs the circuit court to consider "the specific articulable facts of the case" and provides nine factors the court may consider when assessing the real and present threat allegation. See 725 ILCS 5/110-6.1(g)(1)-(9) (West 2022).

¶ 26 If the circuit court determines the defendant should be denied pretrial release, the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid the danger posed by defendant to any person or

the community. 725 ILCS 5/110-6.1(h)(1) (West 2022). While the court's written order in the instant case summarized the reasons defendant should be denied pretrial release, the dangerous standard box was not checked. However, in determining compliance with the directives of the statute, the court's oral findings may be considered in conjunction with the written order. See *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 11 (holding that, considering both the transcript of the hearing and the court's written order, the court's reasons for its detention findings were adequately stated to allow the appellate court to fully consider its decision); see also *In re Madison H.*, 215 Ill. 2d 364, 374-75, 830 N.E.2d 498, 505 (2005) (holding that an oral finding on the record may satisfy the statutory requirement that court put the factual basis for its finding of dispositional unfitness in writing if the oral finding is explicit and advises the parties of the basis for the court's decision). Courts of review normally presume the circuit court knows, follows, and correctly applies the law, unless the record affirmatively rebuts this presumption. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 14.

¶ 27        We have held the determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *Inman*, 2023 IL App (4th) 230864, ¶ 11. Likewise, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44, 123 N.E.3d 393.

¶ 28 Here, defendant has not shown how the circuit court abused its discretion in finding the State established by clear and convincing evidence defendant posed a real and present threat to the safety of the community or that no condition or combination thereof could mitigate the real and present threat to the safety of any person or the community. Nor has he shown how the court abused its discretion in finding less restrictive conditions would not avoid that threat. Instead, defendant essentially asks this court to assess the situation anew and substitute our judgment for that of the circuit court—which we will not do. *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 29 The record demonstrates the circuit court carefully weighed the statutory factors and recognized the State's burden to show, by clear and convincing evidence, "that [defendant] pose[s] a real and present threat to the safety of any person or persons in the community *** and that no condition can mitigate this in the community." After considering the nature and circumstances of the offenses charged (725 ILCS 5/110-6.1(g)(1) (West 2022)), defendant's prior criminal history, which was indicative of violent behavior (725 ILCS 5/110-6.1(g)(2) (West 2022)), the nature of the threat defendant posed to the community (725 ILCS 5/110-6.1(g)(3) (West 2022)), any statements made by, or attributed to, defendant, together with the circumstances surrounding them (725 ILCS 5/110-6.1(g)(4) (West 2022)), defendant's age and physical characteristics (725 ILCS 5/110-6.1(g)(5) (West 2022)), as well as the parties' proffers and arguments, the court granted the State's verified petition. In doing so, the court concluded there were no less restrictive conditions that would mitigate the real and present danger defendant posed to the community and remarked it had not "really heard any evidence *** that would make [it] feel secure in the community releasing [defendant] today." Thus, the court

provided the necessary finding regarding defendant's dangerousness in its oral pronouncement and related it to the evidence presented.

¶ 30    Moreover, the record contains ample evidence supporting the circuit court's conclusion. According to the State's proffer, defendant uploaded multiple videos of himself brandishing firearms over the course of several days in September 2023, which police later seized. Police confirmed defendant did not possess a FOID card and was ineligible for a FOID card based on his juvenile adjudications for robbery and aggravated battery. In one of the videos, defendant pointed a handgun at the camera, and police heard defendant talk about " 'last night' " and say, " 'stole on y'all.' " The State proffered the phrase "stole on y'all" was street slang for attacking or shooting at someone. Further, defendant uploaded a video of himself riding in the backseat of a gray Buick Regal with license plate number " 'EF62654' " while armed with one of the firearms shown in the videos. A gray Buick sedan was described as a suspect vehicle in a shots-fired incident at "17th/Stuart" in Springfield, Illinois, and gunshots were detected by ShotSpotter and witnesses. The Buick was seen fleeing "south on S. Martin Luther King Jr. Dr. from Stuart Street," and it was seen again approximately one block away, heading "southbound at S. Martin Luther King Jr. Dr. and Brown Street" several seconds after the gunshots were detected. Nine-millimeter bullet casings were found at the scene. The Buick was then found parked at "1825 Wirt Avenue," and defendant was on the front porch when the officers executed a search warrant at that address. Police confirmed the videos defendant uploaded to his Facebook story were taken inside the residence.

¶ 31    Overall, the record supports the circuit court's determination the State showed by clear and convincing evidence defendant posed a real and present threat to the safety of any person or the community and that no condition or combination of conditions could mitigate the

threat defendant posed to the safety of any person or the community. Additionally, the court did not abuse its discretion in finding less restrictive conditions would not avoid that threat based on (1) the nature and circumstances of the offenses charged, (2) defendant's prior criminal history, which was indicative of violent behavior, (3) the nature of the threat defendant posed to the community, (4) the statements made by, or attributed to, defendant, together with the circumstances surrounding them, and (5) defendant's age and physical characteristics. See 725 ILCS 5/110-6.1(g)(1)-(5) (West 2022). Thus, the decision was not arbitrary, fanciful, or unreasonable. There was no abuse of discretion. *Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 32                                   III. CONCLUSION

¶ 33        For all these reasons, we affirm the circuit court's judgment.

¶ 34        Affirmed.