Docket No. 107975.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RAYMOND JOHNSON, Appellant.

*Opinion filed April 15, 2010.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Following a stipulated bench trial in the circuit court of Peoria County, defendant was found guilty of aggravated battery with a firearm (720 ILCS 5/12–4.2(a)(1) (West 2006)), aggravated unlawful use of a weapon (720 ILCS 5/24–1.6(a)(1) (West 2006)), and unlawful possession of a weapon by a felon (720 ILCS 5/24–1.1(a) (West 2006)) and sentenced to 12 years' imprisonment. The appellate court vacated the conviction for unlawful possession of a weapon by a felon, affirmed the judgment in all other respects, and remanded the cause with instructions to amend the sentencing order. 387 Ill. App. 3d 780. For the reasons set forth below, we affirm.

## BACKGROUND

Defendant was arrested July 9, 2006, in connection with the shooting of Calvin Powell. Before trial, defendant filed a motion to quash arrest and suppress evidence discovered during a police search of a vehicle owned by Lawrence Thomas. The circuit court heard evidence on the motion from two police officers, Officer Chris Hanley and Lieutenant Jeff Adams. Officer Hanley testified that at approximately 3 a.m. on July 9, he was with Illinois State Police officers at an accident scene when police dispatchers notified him that there had been a shooting approximately six blocks away. Officer Hanley immediately drove toward the reported location. As he approached, he saw defendant and Thomas get into a white Ford Explorer, later identified as Thomas's, that had been parked in the parking lot of the Friendship House, a closed business. According to Officer Hanley, the Friendship House parking lot is just across an alley from the location of the reported shooting. Officer Hanley followed the men out of the Friendship House parking lot in his marked squad car, but he did not activate his lights or siren.

Thomas drove a few blocks to the nearby Taft Homes, where he parked the Explorer, and defendant and Thomas got out of the car and began to walk away. Officer Hanley pulled into the lot and parked approximately 50 to 75 feet away from the Explorer, shining his spotlight on the two men as he approached. They stopped, and Officer Hanley asked them several questions about where they were coming from and whether they knew anything about the reported shooting. According to Officer Hanley, the men were cooperative but vague, and they seemed nervous. He asked them for identification, which they provided, and he ran a warrant check, which revealed no outstanding warrants. Officer Hanley then asked for consent to search the men, and they agreed. When he found nothing, he asked Thomas for consent to search the Explorer. Thomas refused, but Officer Hanley's supervisor, Lieutenant Adams, who had arrived a few minutes after Officer Hanley, directed Officer Hanley to search the Explorer anyway. The officers did not have a warrant. Thomas and defendant were handcuffed and put into the back of a squad car while officers searched the Explorer. Under the front passenger seat, officers found a .22-caliber handgun. Defendant was arrested, and he later admitted that he had used the handgun to shoot at the victim.

Lieutenant Adams also testified at the hearing on defendant's motion. According to his testimony, he was patrolling when he heard that officers were reporting to a shooting, and he was among the first officers to arrive at the scene. There, the officers found a man bleeding on the floor and a woman who said that she had heard shots behind the house, which Lieutenant Adams explained to the court was in the same direction as the Friendship House. Upon hearing that Officer Hanley had followed two men from the Friendship House to the Taft Homes, Lieutenant Adams left the shooting scene and drove to the Taft Homes to provide backup. When he arrived, Lieutenant Adams saw Officer Hanley talking with defendant and Thomas. Officer Hanley informed Lieutenant Adams that the men had consented to a search of their persons but were refusing to consent to search of the Explorer. Believing probable cause existed to conduct a warrantless search, Lieutenant Adams directed Officer Hanley and other officers who had arrived at the Taft Homes to secure the two men and search the Explorer.

In support of his motion to quash the arrest and suppress the handgun, defendant argued that the search of the Explorer was unconstitutional. The State responded that as a mere passenger in the Explorer, defendant lacked standing to challenge the search. Because the parties had not addressed the issue of standing in their opening briefs, the court continued the hearing and allowed both sides time to file supplemental briefs. After receiving the supplemental briefs and hearing argument, the court ruled that defendant lacked standing, although it noted that if defendant had been the driver, the court would have granted the motion.

Defendant then filed a motion to suppress statements he made to police while in custody following the search. He argued that the stop and seizure of his person exceeded what was permissible for an investigative stop and that officers lacked probable cause to extend the seizure. Therefore, defendant argued, the statements he made to the police after his arrest were inadmissible fruits of the poisonous tree. The court denied the motion, finding that police had probable cause to arrest defendant after they found the gun in the Explorer.

After a stipulated bench trial, the court found defendant guilty of aggravated battery with a firearm (720 ILCS 5/12–4.2(a)(1) (West 2006)), aggravated unlawful use of a weapon (720 ILCS

5/24–1.6(a)(1) (West 2006)), and unlawful possession of a weapon by a felon (720 ILCS 5/24–1.1(a) (West 2006)). The court sentenced defendant to 12 years' imprisonment for aggravated battery, 7 years' imprisonment for aggravated unlawful use of a weapon, and 7 years' imprisonment for unlawful possession of a weapon by a felon, all sentences to run concurrently.

Defendant appealed, arguing the circuit court improperly denied his motions because the initial stop of defendant and Thomas had resulted in an unlawful arrest of defendant. The State continued to argue defendant lacked standing and, in the alternative, it argued the stop did not amount to an unlawful arrest. The appellate court affirmed (387 Ill. App. 3d 780), finding the search of the Explorer was justified under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) and *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983). Because it found the search was constitutional, the appellate court declined to address the standing issue. 387 Ill. App. 3d at 792.

Defendant also argued on appeal that his convictions for unlawful possession of a weapon by a felon and aggravated unlawful use of a weapon were premised on the same physical act, and therefore the convictions violated the one-act, one-crime rule. The State conceded that the two convictions violated the one-act, one-crime rule and that one of the convictions had to be vacated. However, while defendant argued unlawful possession of a weapon by a felon was the more serious offense, such that the aggravated unlawful use of a weapon conviction should be vacated, the State maintained aggravated unlawful use of a weapon was the greater offense, and the unlawful possession of a weapon by a felon must be vacated. The court agreed with the State, and therefore it vacated defendant's conviction for unlawful possession of a weapon by a felon and remanded the cause to the circuit court to amend the sentencing order. 387 Ill. App. 3d at 795. We granted defendant's petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315).

## ANALYSIS

### Motions to Suppress

In reviewing a trial court's ruling on a motion to suppress

evidence, we apply the two-part standard of review adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). *People v. Cosby*, 231 Ill. 2d 262, 271 (2008), quoting *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006). Under this standard, we give deference to the factual findings of the trial court, and we will reject those findings only if they are against the manifest weight of the evidence. *Cosby*, 231 Ill. 2d at 271, quoting *Luedemann*, 222 Ill. 2d at 542-43. However, a reviewing court " 'remains free to undertake its own assessment of the facts in relation to the issues,' " and we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Cosby*, 231 Ill. 2d at 271, quoting *Luedemann*, 222 Ill. 2d at 542-43.

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967); *People v. Galvin*, 127 Ill. 2d 153, 169 (1989). The Supreme Court recognized a limited exception to the traditional warrant requirement in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Under the *Terry* exception, a police officer may briefly stop a person for temporary questioning if the officer reasonably believes the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880. In this case, we need not examine the basis for Officer Hanley's initial stop of defendant and Thomas, because defendant concedes it was lawful under *Terry* principles.

Instead, defendant argues that the search of Thomas's vehicle was unlawful and not justified as part of the *Terry* stop. Before the trial court, the State responded that defendant lacked "standing" to challenge the search of Thomas's vehicle. Although the appellate court found it unnecessary to determine whether defendant had standing, the State reasserts the argument here, noting this court may affirm on any basis found in the record. See, *e.g.*, *People v. Durr*, 215 Ill. 2d 283, 296 (2005). As the State acknowledges, although the parties framed the question as one of "standing" to challenge the vehicle search, this court no longer uses the rubric of "standing" when

analyzing fourth amendment claims. *People v. Sutherland*, 223 Ill. 2d 187, 229-30 (2006), citing *People v. Pitman*, 211 Ill. 2d 502, 521 (2004); *Rakas v. Illinois*, 439 U.S. 128, 138-40, 58 L. Ed. 2d 387, 398-99, 99 S. Ct. 421, 427-29 (1978). Instead, the relevant inquiry is whether the person claiming the protections of the fourth amendment had a legitimate expectation of privacy in the place searched. *Sutherland*, 223 Ill. 2d at 230, citing *Pitman*, 211 Ill. 2d at 514; *People v. Kidd*, 178 Ill. 2d 92, 135 (1997), citing *Rakas*, 439 U.S. at 143, 58 L. Ed. 2d at 401, 99 S. Ct. at 430. Factors relevant in determining whether a legitimate expectation of privacy exists include the individual's ownership or possessory interest in the property; prior use of the property; ability to control or exclude others' use of the property; and subjective expectation of privacy. *Sutherland*, 223 Ill. 2d at 230, citing *People v. Johnson*, 114 Ill. 2d 170, 191-92 (1986). The defendant challenging a search has the burden of establishing that he had a legitimate expectation of privacy in the searched property. *Johnson*, 114 Ill. 2d at 191-92.

Defendant does not argue before this court that he had a legitimate expectation of privacy in Thomas's vehicle, and we find that the record would not support such an argument. Defendant had been a passenger in the vehicle, and no evidence in the record suggests that defendant had any ownership or possessory interest in the vehicle. Similarly, defendant failed to provide any evidence that he had previously used the vehicle, that he could control others' use of the property, or that he had any subjective expectation of privacy in the vehicle. On this record, we are compelled to conclude that defendant had no legitimate expectation of privacy in Thomas's vehicle, and he therefore may not challenge the search of the vehicle.

*Brendlin v. California*, 551 U.S. 249, 168 L. Ed. 2d 132, 127 S. Ct. 2400 (2007), on which defendant relies, offers little support for his position. In that case, the defendant was a passenger in a vehicle stopped without reasonable suspicion, in violation of *Terry*. *Brendlin*, 551 U.S. at 252-56, 168 L. Ed. 2d at 136-39, 127 S. Ct. at 2403-06. The defendant challenged the seizure of the vehicle as unlawful, but the trial court found that the defendant had not been seized by the initial stop of the vehicle. *Brendlin*, 551 U.S. at 253, 168 L. Ed. 2d at 137, 127 S. Ct. at 2404. The Supreme Court disagreed, holding that the defendant was "seized" within the meaning of the fourth

amendment when police officers stopped the vehicle, and the defendant could challenge the unlawful stop. *Brendlin*, 551 U.S. at 251, 168 L. Ed. 2d at 136, 127 S. Ct. at 2403.

Initially, we note that *Brendlin* involved a vehicle stop, while defendant and the State both agree that this case is properly analyzed as a traditional *Terry* stop. Even if we assume *Brendlin* applies, however, the State acknowledges that defendant's person was "seized" when Officer Hanley stopped defendant and Thomas in the Taft Homes parking lot. As we have explained, *Terry* and its progeny allow for a brief stop–and therefore necessarily a brief seizure–of a person when the officer reasonably believes the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880. Moreover, unlike the defendant in *Brendlin*, defendant here concedes that the *Terry* stop was lawful and is challenging only the subsequent actions of the police officers. Thus, *Brendlin*'s holding that a passenger in a traffic stop is "seized" is of little relevance.

Defendant also argues, however, that the he was arrested without probable cause during the encounter at Taft Homes. According to defendant, anything obtained during the search of the vehicle was therefore "fruit of the poisonous tree" and inadmissible against defendant without regard to his expectation of privacy in the vehicle. See *People v. Brownlee*, 186 Ill. 2d 501, 521 (1999). We disagree.

"[W]here an officer's confinement of a person goes beyond the limited restraint of a *Terry* investigative stop, a subsequent consent to search may be found to be tainted by the illegality." *Brownlee*, 186 Ill. 2d at 519, citing *Florida v. Royer*, 460 U.S. 491, 501, 75 L. Ed. 2d 229, 238-39, 103 S. Ct. 1319, 1326 (1983). Thus, evidence obtained as a result of an illegal arrest may be subject to the exclusionary rule and inadmissible. See, *e.g.*, *Wong Sun v. United States*, 371 U.S. 471, 484-86, 9 L. Ed. 2d 441, 453-54, 83 S. Ct. 407, 415-17 (1963). However, a determination that defendant was illegally detained will not necessarily resolve the issue of whether subsequently obtained evidence is admissible. *People v. Lovejoy*, 235 Ill. 2d 97, 130 (2009). Instead, as we have explained,

> "The relevant inquiry is whether the [evidence] bear[s] a sufficiently close relationship to the underlying illegality. *New York v. Harris*, 495 U.S. 14, 19, 109 L. Ed. 2d 13, 21, 110 S.

Ct. 1640, 1643 (1990). Generally, courts resolve this question by considering whether the evidence was obtained 'by means sufficiently distinguishable to be purged of the primary taint' of illegality. *Wong Sun v. United States*, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417 (1963). However, this attenuation analysis is only appropriate where the evidence sought to be suppressed was actually obtained *as a result of* some illegal government activity. [Citations.]" (Emphasis added.) *Lovejoy*, 235 Ill. 2d at 130.

As the Seventh Circuit has noted, "[t]here must be some causal nexus between the illegal police activity and the disputed evidence." *United States v. Meece*, 580 F.3d 616, 619 (7th Cir. 2009).

In the present case, defendant argues that the evidence found in Thomas's vehicle was tainted by an illegal arrest that occurred when officers handcuffed him and placed him in the back of a squad car. Even if defendant is correct that the officers' actions escalated an otherwise reasonable *Terry* investigative stop into an arrest, it is clear that the evidence obtained from the car was not obtained "as a result of" that arrest. According to the testimony at the hearing on defendant's motion, Lieutenant Adams directed Officer Hanley to search the car after Thomas refused consent. Only then, as the search began, did the officers handcuff defendant and put him in the squad car to facilitate the search. Regardless of whether those actions amounted to an unlawful arrest, the alleged arrest did not lead to the search. Therefore, the alleged arrest could not have tainted the search with illegality.

Defendant also asks us to suppress statements he made at the police station following his formal arrest (which occurred after the search of Thomas's car). However, defendant's argument that the alleged arrest tainted the subsequent incriminating statements is similarly unpersuasive. Again, the relevant inquiry is whether the statements were obtained by exploitation of the allegedly illegal arrest or " ' "by means sufficiently distinguishable to be purged of the primary taint." ' " *People v. Morris*, 209 Ill. 2d 137, 157 (2004), quoting *Wong Sun*, 371 U.S. at 488, 9 L. Ed. 2d at 455, 83 S. Ct. at 417, quoting J. Maguire, Evidence of Guilt 221 (1959). Although the defendant's statements to the police followed the alleged arrest in time, we find the statements were sufficiently attenuated from the

alleged arrest so as to remove any possible "taint."

Factors to be considered in determining whether a statement is the product of an illegal arrest include: (1) the proximity in time between the arrest and the statement; (2) the presence of intervening circumstances; (3) the flagrancy of the police misconduct; and (4) whether *Miranda* warnings were given before the statements were made. *Morris*, 209 Ill. 2d at 157. The record in this case does not indicate how much time passed between the alleged arrest and defendant's statements at the police station. We have noted that the temporal proximity between the arrest and the statement is often an ambiguous factor, the significance of which will depend on the circumstances of the case, including the conditions under which the time passes. *Morris*, 209 Ill. 2d at 160; *People v. White*, 117 Ill. 2d 194, 223-24 (1987). Thus, without record evidence of those circumstances in this case, the temporal-proximity analysis is not helpful.

The State argues that the gun found in Thomas's vehicle provided intervening probable cause that weighs in favor of attenuation in this case. We agree. Although the presence of intervening probable cause does not assure attenuation in every case, it is an important factor in the attenuation analysis. *Morris*, 209 Ill. 2d at 158; see also *People v. Ornelas*, 295 Ill. App. 3d 1037, 1045 (1998). Here, the presence of a loaded gun under the front seat of Thomas's car provided probable cause to arrest defendant that we have already explained was independent of the alleged arrest. As we noted in *Morris*,

> "Had the officers decided at this time that defendant's initial detention was illegal, they could have released him and then, based upon the probable cause that developed independently of his initial arrest, immediately arrested him again. Under this scenario, there would be no question that defendant's statements and confession would be admissible. It follows, then, that the probable cause that would support a second arrest only minutes after defendant's first arrest also serves to break the causal connection between defendant's first illegal arrest and the statements ***." *Morris*, 209 Ill. 2d at 159.

Accordingly, based on the facts in this case, the development of independent probable cause weighs heavily in favor of attenuation.

With respect to the third factor, this court has explained that officer conduct is "flagrant" when it is carried out in such a manner as to cause surprise, fear, and confusion, or when it has a quality of purposeful or intentional misconduct. *People v. Foskey*, 136 Ill. 2d 66, 86 (1990), citing *Brown v. Illinois*, 422 U.S. 590, 605, 45 L. Ed. 2d 416, 428, 95 S. Ct. 2254, 2262 (1975). None of those factors were present in this case. Even if we accept defendant's argument that the officers' conduct was improper, not all improper conduct is flagrant. Nothing in the record suggests that the officers intimidated or bullied defendant, nor did defendant testify that he was frightened or confused by the officers' actions. Similarly, we do not find any suggestion that the officers engaged in intentional misconduct. According to defendant, the officers' act of handcuffing defendant and seating him in the backseat of a squad car amounted to an unlawful arrest. We need not determine whether, considering all of the circumstances of this case, the officers' actions were unlawful. However, we note that several federal courts of appeal have held that actions similar to those taken by police officers in this case did not amount to an illegal arrest. See, *e.g.*, *United States v. Tilmon*, 19 F.3d 1221, 1226 (7th Cir. 1994) (firearms displayed, defendant handcuffed and seated in squad car during search); *United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983) (defendant handcuffed and forced to lie down on the ground during frisk); *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993) (firearms displayed and defendant handcuffed). Thus, even if the officers' actions in this case elevated the stop into an unlawful arrest, their actions were certainly not flagrant misconduct.

Finally, there is no question that defendant was read his *Miranda* rights prior to giving his statement at the police station. While the presence of *Miranda* warnings alone is not sufficient to purge the taint of illegality from an illegal arrest, it is a factor to be considered. *Morris*, 209 Ill. 2d at 158. When the *Miranda* warnings are taken together with the intervening circumstances and lack of flagrant misconduct in this case, it becomes clear that the statements defendant made to the police were sufficiently attenuated from the alleged arrest to purge any taint of illegality. Thus, the trial court properly denied defendant's motion to suppress the statements.

Our conclusion that neither the search of Thomas's vehicle nor defendant's statements to the police were tainted by any alleged

-10-

illegality makes it unnecessary for us to determine whether defendant was, in fact, arrested when officers handcuffed him and seated him in the squad car. We therefore express no opinion on that issue.

In summary, defendant did not have a legitimate expectation of privacy in Thomas's vehicle, and he argues no other basis which would allow us to find that defendant's fourth amendment rights were violated. Without such a basis, defendant may not challenge the validity of the search, and the trial court properly denied his motions to quash arrest and suppress evidence. We therefore need not address his additional arguments related to the merits of the search, including his argument that it was unlawful under the Supreme Court's recent decision in *Arizona v. Gant*, 556 U.S. ___, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009).

### One-Act, One-Crime

Defendant also argues that his convictions for unlawful possession of a weapon by a felon and aggravated unlawful use of a weapon are both premised upon the same physical act and both cannot stand under one-act, one-crime principles. Defendant asserts unlawful possession of a weapon by a felon is the more serious offense, and therefore his conviction for aggravated unlawful use of a weapon should be vacated. The State concedes one of the convictions must be vacated, but it asserts aggravated unlawful use of a weapon is the more serious offense, citing its higher felony classification, higher minimum sentence, and higher period of mandatory supervised release. The State submits, therefore, that defendant's conviction for unlawful possession of a weapon by a felon should be vacated.

The application of the one-act, one-crime rule is a question of law, which we review *de novo. People v. Robinson*, 232 Ill. 2d 98, 105 (2008). Under the rule, a defendant may not be convicted of multiple offenses that are based upon precisely the same single physical act. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996); *People v. King*, 66 Ill. 2d 551, 566 (1977). Thus, if a defendant is convicted of two offenses based upon the same single physical act, the conviction for the less serious offense must be vacated. *People v. Lee*, 213 Ill. 2d 218, 226-27 (2004). It is the province of the legislature to determine the seriousness of an offense. *Lee*, 213 Ill. 2d at 228. To determine which of two offenses is the less serious, therefore, we consider the intent of the legislature as expressed in the plain language of the

-11-

statutes involved. *Lee*, 213 Ill. 2d at 228. As we have previously held, common sense indicates that the legislature will provide a greater punishment for the crime it deems to be more serious. *Lee*, 213 Ill. 2d at 228.

In this case, the information charged that defendant committed aggravated unlawful use of a weapon when he "did knowingly carry on or abotu [*sic*] his person and immediately accessible to him an uncased loaded handgun at a time when he was not on his own land, or in his own abode or fixed place of business[,] and the defendant has been previously convicted of a felony in this state," in violation of section 24–1.6(a)(1) of the Criminal Code of 1961 (the Code) (720 ILCS 5/24–1.6(a)(1) (West 2006)). The information also charged that defendant committed unlawful possession of a weapon by a felon when he "knowingly possessed on or about his person a firearm[,] having been previously convicted of a felony under the laws of this state or any other jurisdiction," in violation of section 24–1.1(a) of the Code (720 ILCS 5/24–1.1(a) (West 2006)). As the State concedes, defendant's convictions, as charged in this case, are clearly premised on the same physical act of possessing the handgun on or about his person.

With respect to the penalties, section 24–1.6 provides in pertinent part that aggravated unlawful use of a weapon "is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years." 720 ILCS 5/24–1.6(d) (West 2006). Section 24–1.1 of the Code, on the other hand, provides in pertinent part that unlawful possession of a weapon by a felon "shall be a Class 3 felony for which the person, if sentenced to a term of imprisonment, shall be sentenced to no less than 2 years and no more than 10 years." 720 ILCS 5/24–1.1(e) (West 2006). As a Class 2 felony, aggravated unlawful use of a weapon as charged in this case is subject to a mandatory supervised release term of two years, while unlawful possession of a weapon by a felon, as charged as a Class 3 felony in this case, is subject to a mandatory supervised release term of one year. 730 ILCS 5/5–8–1(d)(2), (d)(3) (West 2006).

Defendant argues that unlawful possession of a weapon by a felon is the greater offense, relying on the greater maximum sentence allowed for that offense. Defendant also relies on *Lee*, in which we held that aggravated battery with a firearm was a more serious offense

than second degree murder based in part on the greater maximum sentence allowed for aggravated battery with a firearm. *Lee*, 213 Ill. 2d at 228. However, although the maximum possible sentence is one indicator of the legislature's intent with respect to the seriousness of the offense, it is not the only indicator. *Lee*, 213 Ill. 2d at 227-29. In *Lee*, for example, we also considered the legislative classification. *Lee*, 213 Ill. 2d at 227-29. Where the relative seriousness of the offenses could not be determined by reference to the comparative punishments alone, we have also considered the mental state required for each offense (*People v. Mack*, 105 Ill. 2d 103 (1984), *vacated on other grounds*, 479 U.S. 1074, 94 L. Ed. 2d 127, 107 S. Ct. 1266 (1987)) and the specificity with which each offense is defined in the statute (*City of Chicago v. Hill*, 40 Ill. 2d 130, 136-37 (1968)). The determinative question in each case is the intent of the legislature, and we will not artificially narrow our attempts to determine that intent to just one indicator. Instead, we consider the relevant statutes as a whole and in context.

Turning back to the offenses at issue in this case, unlawful possession of a weapon by a felon was given a lower felony classification by the legislature, was made a probationable offense, and was made subject to a shorter period of mandatory supervised release. By contrast, aggravated unlawful use of a weapon was given a higher felony classification by the legislature, was made a nonprobationable offense, was given a higher minimum sentence of imprisonment, and was made subject to a longer period of mandatory supervised release. We conclude that the legislature intended for unlawful possession of a weapon by a felon to be the less serious offense. Defendant's conviction for unlawful possession of a weapon by a felon must therefore be vacated under our one-act, one-crime rule.

We note that the appellate court recently reached the opposite conclusion regarding the same two offenses in *People v. Martinez*, 386 Ill. App. 3d 153, 166 (2008). There, the court summarily held, without analysis, "unlawful use of a weapon by a felon is the most serious offense in that it carries a greater range of sentence than aggravated unlawful use of a weapon. Accordingly, the court agrees that defendant's conviction and sentence for aggravated unlawful use of a weapon should be vacated." *Martinez*, 386 Ill. App. 3d at 166. The court did not consider the felony classifications of the offenses,

the prescribed periods of mandatory supervised release, or the possibility of probation. To the extent that *Martinez* is inconsistent with our holding today, it is overruled.

CONCLUSION

We find that defendant had no legitimate expectation of privacy in Thomas's vehicle, and the police officers' actions did not escalate the stop of defendant into a warrantless arrest. Thus, the trial court properly denied defendant's motions to quash arrest and suppress evidence. With respect to defendant's one-act, one-crime argument, we hold that aggravated unlawful use of a weapon is a more serious offense than unlawful possession of a weapon by a felon, and defendant's conviction for unlawful possession of a weapon by a felon must therefore be vacated.

For the reasons stated, we affirm the judgment of the appellate court.

*Affirmed.*