2024 IL App (1st) 230042

No. 1-23-0042

Opinion filed November 8, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 1419701 |
| | ) | |
| ERIC SHANNON, | ) | Honorable |
| | ) | Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Presiding Justice Mikva concurred in the judgment and opinion.
Justice Oden Johnson concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1     Defendant Eric Shannon appeals his convictions for unlawful possession of a weapon by a

felon (720 ILCS 5/24-1.1 (West 2022)) and aggravated unlawful use of a weapon (720 ILCS 5/24-

1.6 (West 2022)). There are three issues on appeal. First, did the circuit court's sentence violate

the one-act, one-crime doctrine when Shannon was convicted on three counts despite possessing

only one gun? Second, did the State present sufficient evidence to prove beyond a reasonable doubt

that Shannon was a felon? Third, is the statute prohibiting the possession of a firearm by a felon

unconstitutional as applied to Shannon? We conclude that the circuit court's sentence violated the

one-act, one-crime doctrine; therefore, Shannon's convictions for aggravated unlawful use of a

weapon must be vacated. However, the State presented sufficient evidence to support Shannon's conviction for unlawful possession of a weapon by a felon, and Shannon forfeited his as-applied constitutional argument. Accordingly, we affirm Shannon's conviction for unlawful possession of a weapon by a felon but remand to the circuit court to amend the sentencing order.

¶ 2                                    I. BACKGROUND

¶ 3      Chicago Police Officers Kevin Butler and Pedro Ortiz were dispatched to patrol an area on the far south side of Chicago after several calls had warned of a person in the area with a gun. While patrolling, Officer Butler noticed an SUV parked at a gas station pump. The SUV had a temporary license plate affixed to the rear license plate area and several aspects of it were unreadable. Even after getting closer to the vehicle, the officers could not determine the state of issuance, so they exited their patrol vehicle to investigate further.

¶ 4      The officers approached from either side of the SUV. Shannon was sitting alone in the vehicle. Officer Butler, who had approached the passenger side of the SUV, noticed what he believed to be the end of an extended magazine protruding from underneath a cardboard box on the passenger seat, so he indicated to Officer Ortiz that Shannon should be detained. After temporarily detaining Shannon, Officer Butler asked whether Shannon had a FOID card or Concealed Carry License. Shannon replied that he did not have either. Officer Butler then retrieved a firearm from beneath the cardboard box. The gun was a semi-automatic pistol with the serial number defaced. Shannon was transported to the police station where he was read his *Miranda* rights. He again informed the officers that he did not have a FOID card or CCL, and he admitted that he was a convicted felon. Shannon denied that he owned either the handgun or the vehicle.

¶ 5 Shannon was subsequently charged with one count of unlawful possession of a weapon by a felon and two counts of aggravated unlawful use of a weapon. At a bench trial, the parties stipulated that Shannon had not been issued a FOID card or a CCL by the Illinois State Police and that he had previously been convicted of carry or possession of a firearm in a school. The circuit court found defendant guilty on all counts and sentenced him to concurrent three-year sentences on each count. This timely appeal followed. Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024).

¶ 6                                    II. ANALYSIS

¶ 7                            A. One-Act, One-Crime

¶ 8 Shannon argues that two of his convictions violate the one-act, one-crime rule. Applying the one-act, one-crime rule "is a question of law, which we review *de novo*." *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). The one-act, one-crime rule provides that "[m]ultiple convictions are improper if they are based on precisely the same physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). An act is "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977). Our supreme court has explained that a person's status as a felon "is not an 'act' but, rather, a state of being." *People v. Coats*, 2018 IL 121926, ¶ 27. Similarly, a person's status as unlicensed to possess a firearm is also not an "act" within the meaning of the rule. See *People v. Spears*, 2022 IL App (2d) 210583, ¶ 32 (determining that convictions for possession of a firearm without a FOID card and possession of a firearm by a felon violate the one-act, one-crime rule when the defendant possesses only one firearm). The "act" in each case is the possession of a single firearm; therefore, as the State concedes, Shannon's multiple convictions in this case violate the one-act, one-crime rule.

¶ 9 The parties disagree, however, regarding which conviction should stand. "[I]f a defendant is convicted of two offenses based upon the same single physical act, the conviction for the less serious offense must be vacated." *Johnson*, 237 Ill. 2d at 97. Shannon argues that his conviction for possession of a firearm by a felon is the less serious offense. The State contends that Shannon's convictions for aggravated unlawful use of a weapon are less serious. We determine the seriousness of an offense by "the plain language of the statutes involved." *Id.* "[C]ommon sense indicates that the legislature will provide a greater punishment for the crime it deems to be more serious." *Id.* However, the length of a prison sentence is only one aspect of the seriousness of a particular crime; courts also look to the felony classification of the crime, whether the crime is a probationable offense, and the period of mandatory supervised release attached to the crime, among other things. *Id.* at 99.

¶ 10 The Illinois Supreme Court held in *Johnson* that "the legislature intended for unlawful possession of a weapon by a felon to be the less serious offense" compared to aggravated unlawful use of a weapon. *Id*. The court reasoned that "aggravated unlawful use of a weapon was given a higher felony classification by the legislature, was made a nonprobationable offense, was given a higher minimum sentence of imprisonment, and was made subject to a longer period of mandatory supervised release." *Id*. However, importantly, the distinctions that the court drew between the two offenses are fact dependent. Whether aggravated unlawful use of a weapon had a higher felony classification than unlawful possession of a weapon by a felon depended on various factors, such as whether the defendant had previously been convicted of aggravated unlawful use of a weapon or whether the defendant was wearing or in possession of body armor when he committed the offense. 720 ILCS 5/24-1.6. In *Johnson*, the charge of aggravated unlawful use of a weapon was

treated as a class 2 felony, while the charge for unlawful possession of a weapon by a felon was a class 3 felony. 237 Ill. 2d at 98. There, unlawful possession of a weapon by a felon was probationable, had a lower minimum sentence, and had a shorter period of mandatory supervised release. *Id.* at 98-99.

¶ 11    Here, the facts underlying Shannon's convictions erase these distinctions between the two offenses. Shannon was charged with two class 2 felonies, neither was probationable, and both had the same minimum sentence and period of supervised release. However, Shannon's conviction for unlawful possession of a weapon by a felon had a higher maximum penalty compared to his convictions for aggravated unlawful use of a weapon. Compare 720 ILCS 5/24-1.1(e) (14 years) with 720 ILCS 5/24-1.6(d)(1) (7 years). Therefore, in this case, because all else is equal, the fact that the legislature provided a greater possible punishment for unlawful possession of a weapon by a felon demonstrates that it is the more serious offense. Accordingly, Shannon's convictions for aggravated unlawful use of a weapon must be vacated.

¶ 12                         B. Sufficiency of the Evidence

¶ 13    Shannon's challenge to the sufficiency of the evidence against him is narrow. He does not contest that there was sufficient evidence that he possessed a firearm. Instead, Shannon claims that the evidence was insufficient to prove beyond a reasonable doubt that he "has been convicted of a felony ***." 720 ILCS 5/24-1.1(a). When he was 15 years old, Shannon was convicted of unlawful possession of a firearm in a school. 720 ILCS 5/24-1(a)(4), (c)(1.5) (West 2008). At the time, the case was automatically transferred to adult criminal court. 705 ILCS 405/5-130(3)(a) (West 2008). Today, such a case could only be transferred from juvenile court at the discretion of the judge. 705 ILCS 405/5-805(3) (West 2022). Thus, Shannon argues, because it is unlikely that his case would

have resulted in a criminal conviction in 2024, his 2008 conviction cannot support a finding that he "has been convicted of a felony ***." 720 ILCS 5/24-1.1(a).

¶ 14    In response, the State contends that Shannon has forfeited and waived this argument. Regarding forfeiture, it is a well-settled rule that "challenges to the sufficiency of the evidence may be made for the first time on appeal." *People v. Carter*, 2021 IL 125954, ¶ 41; see also *People v. Woods*, 214 Ill.2d 455, 470 (2005); *People v. Enoch*, 122 Ill. 2d 176, 190 (1988). Thus, "it does not matter that defendant did not raise this argument in the trial court ***." *Carter*, 2021 IL 125954, ¶ 41.

¶ 15    As to waiver, at trial, Shannon entered into a stipulation regarding his 2008 conviction:

>    "[Prosecutor]: Judge, at this time the parties would proceed by way of stipulation. The parties -- It is hereby stipulated by and between the parties that *** the defendant had previously been convicted of carry or possession of a firearm in a school under Case No. 07C66145801 on April 17th, 2008 before a Judge Zelezinski Z-E-L-E-Z-I-N-S-K-I.
>
>    So Stipulated?
>
>    [Defense Counsel]: So Stipulated."

A defendant who enters into a stipulation "waive[s] the necessity of proof of all or part of the case which the People have alleged against him." *People v. Polk*, 19 Ill. 2d 310, 315 (1960). This means that "[a]fter stipulating to facts, a defendant is precluded from attacking or otherwise contradicting those stipulated facts." *People v. Gray*, 2024 IL 127815, ¶ 26. However, a stipulation "is an agreement between parties or their attorneys with respect to an issue before the court." *Woods*, 214 Ill. 2d at 468. It is conclusive only "as to all matters necessarily included in it." *Id.* at 469. Thus, to determine the breadth of a stipulation, "the court must ascertain and give effect to the intent of

the parties." *Id.* As in other contexts, the clearest evidence of the intent of the parties is the plain language of the agreement. See *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007) ("The cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language."); see also *People v. McClure*, 218 Ill. 2d 375, 382 (2006) ("The best evidence of legislative intent is the language of the statute.").

¶ 16   In *Gray*, the Illinois Supreme Court found the language of a stipulation between the parties was dispositive. 2024 IL 127815, ¶ 27. There, Gray was convicted of being an armed habitual criminal based, in part, on a conviction from when he was 17 years old. *Id.* ¶¶ 9, 14. As here, "under the law in effect in 2016, he would have been tried and adjudicated as a juvenile for the 2002 offense, so [he argued] the 2002 conviction was not a qualifying conviction under the armed habitual criminal statute." *Id.* ¶ 18. The Illinois Supreme Court concluded that Gray had waived this challenge because he had stipulated that he had "two prior qualifying felony convictions for the purposes of sustaining the charge of armed habitual criminal." *Id.* ¶ 27. Significantly, the court recognized that Gray "did not merely stipulate to the admission of certified copies of his prior convictions or that he had been convicted of specified felonies." *Id.* Instead, Gray's "stipulation established the facts that the defendant had been convicted of two prior felonies *and* that those felonies were qualifying felonies ***." (Emphasis in original.) *Id.* Thus, "[t]he stipulation satisfied the State's obligation to prove those facts." *Id.*

¶ 17   Not so here. Shannon stipulated only that he "had previously been convicted of carry or possession of a firearm in a school." He did not stipulate that that offense was a felony or that it qualified to support the element of a felony conviction within the meaning of the unlawful possession of a weapon by a felon section of the Criminal Code. These were conclusions that the

circuit court still had to draw from the evidence presented. While Shannon waived any challenge to the fact that he was convicted of possessing a firearm in a school, nothing in the language of or the context surrounding the stipulation suggests that Shannon intended to waive his ability to argue that his conviction failed to establish the element of his felon status.

¶ 18    Nevertheless, Shannon's argument that his 2008 conviction cannot support a finding that he "has been convicted of a felony" is foreclosed by Illinois Supreme Court precedent. The prior conviction element of unlawful possession of a weapon by a felon requires the prosecution to prove "only the defendant's felon status." *People v. McFadden*, 2016 IL 117424, ¶ 14 *overruled on other grounds by In re N.G.*, 2018 IL 121939 (quoting *People v. Walker*, 211 Ill. 2d 317, 337 (2004)). The Illinois Supreme Court did not overrule *McFadden* in its entirety; rather, the court overruled the opinion "to the extent that [the] result [in *N.G.*] and controlling United States Supreme Court precedent conflict[ed] with *McFadden*." *N.G.*, 2018 IL 121939, ¶ 34. To that end, the requirement that the State must prove "only the defendant's felon status" remains undisturbed. *McFadden*, 2016 IL 117424, ¶ 14. Accordingly, the question before the circuit court was only whether Shannon was a felon at the time he possessed the weapon. Accordingly, because the State proved that Shannon had previously convicted in a criminal court of the felony offense of possession of a weapon in a school, the State proved his "felon status." No further analysis was necessary.

¶ 19    This result is borne out by the Illinois Supreme Court's decision in *N.G.*, 2018 IL 121939. There, the defendant's conviction was based on a statute that was facially unconstitutional. *Id.* ¶ 32. The court determined that the defendant's conviction under that statute could not support a finding that he had "been criminally convicted of at least 3 felonies." *Id.* ¶¶ 30, 33. The court explained that the defendant's conviction was "void *ab initio*; that is, it is as if the law had never

been passed." *Id.* ¶ 50. This conclusion is significant for three reasons. First, the nullification of a conviction "is not self-executing." *Id.* ¶ 52. Instead, it "is axiomatic that no judgment, including a judgment of conviction, is deemed vacated until a court with reviewing authority has so declared." (Internal quotation marks omitted.) *Id.* A defendant remains bound by a judgment until a court acts to overturn that judgment. Thus, a defendant maintains his status as a felon until a court determines that he is not one. Second, because the defendant's conviction was void and not voidable, the judgment could be "impeached at any time in any proceeding whenever a right is asserted by reason of that judgment." (Internal quotation marks omitted.) *Id.* ¶ 43. Therefore, the Illinois Supreme Court could vacate the conviction notwithstanding the procedural posture of the case. *Id.* Third, because the conviction was void *ab initio*, "the conviction must be treated by the courts as if it did not exist." *Id.* ¶¶ 36, 50. Accordingly, because the defendant's conduct "was not, is not, and could never be a crime," once the court determined that his conviction was void, it was as if he had never been convicted. *Id.*

¶ 20    Here, Shannon does not allege that his past conviction is void or even voidable. Instead, he asserts that he would not have been convicted of a felony if he had been charged with unlawful possession of a weapon in a school as a 15-year-old today. That may be true, but it is not relevant to whether Shannon had the status of a felon when he was arrested for possessing a firearm. At the time of his arrest, Shannon's felony conviction had not been vacated. Even if Shannon had presented a meritorious argument for vacating that conviction, his conviction would not have been void *ab initio*; consequently, he still would have been a felon at the time he was in possession of the firearm. *Id.* ¶ 62 ("[W]here a defendant has not taken affirmative action to have a court set aside the initial conviction and therefore still has an extant, undisturbed felony conviction on his

record at the time he engaged in the conduct on which the subsequent UUWF prosecution was predicated, the elements of the UUWF statute are satisfied and the UUWF conviction may stand, regardless of whether the initial conviction might be subject to vacatur later ***."). Therefore, the stipulation was sufficient to show beyond a reasonable doubt that Shannon "has been convicted of a felony" for the purposes of the unlawful possession of a weapon by a felon statute.

¶ 21                    C. *Bruen* Challenge

¶ 22    Finally, Shannon contends for the first time on appeal that the section of the Criminal Code that criminalizes the possession of a firearm by a felon is unconstitutional as applied to him. When determining whether a statute is constitutional, "we must begin with the presumption of its constitutionality." *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 33. The party challenging the validity of a statute "has the burden of clearly establishing a constitutional violation." *People v. Jones*, 223 Ill. 2d 569, 596 (2006). A defendant who claims that a statute is unconstitutional as applied to him must show "that the statute violates the constitution as it applies to the facts and circumstances of [the defendant's case]." *People v. Thompson*, 2015 IL 118151, ¶ 36. "Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* ¶ 37. "[A] reviewing court is not capable of making an as-applied finding of unconstitutionality in the 'factual vacuum' created by the absence of an evidentiary hearing and findings of fact by the trial court." *People v. Harris*, 2018 IL 121932, ¶ 41.

¶ 23    The decisions of this court are divided on the issue of whether the exception in *Holman* extends to as-applied constitutional challenges in other contexts. Compare *People v. Jackson*, 2024 IL App (1st) 221095-U, ¶ 27 (concluding that *Holman* is limited to *Miller* claims), *People v. Ivy*,

2023 IL App (4th) 220646-U, ¶ 16, and *People v. Langston*, 2023 IL App (4th) 230162-U, ¶ 23, with *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 58 ("Contrary to the State's position, this principle is not limited to cases involving as-applied challenges to juvenile sentences under the eighth amendment."), *People v. Travis*, 2024 IL App (3d) 230113, ¶ 17 (considering an as-applied challenge after concluding that the record was sufficiently developed), *People v. Gross*, 2024 IL App (2d) 230017-U, ¶ 18 (same), and *People v. Echols*, 2024 IL App (2d) 220281-U, ¶ 145 (same); see also Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (providing that unpublished Rule 23 orders filed on, or after, January 1, 2021, "may be cited for persuasive purposes"). We need not resolve this dispute in this case, because we conclude that the record has not been sufficiently developed to address Shannon's claim here.

¶ 24 Defendant contends that the unlawful possession of a weapon by a felon statute is unconstitutional when applied to individuals, such as him, whose underlying felony conviction is non-violent in nature. The precedents of this court have uniformly rejected this contention. See Travis, 2024 IL App (3d) 230113, ¶ 37; Baker, 2023 IL App (1st) 220328, ¶ 37; People v. Mobley, 2023 IL App (1st) 221264, ¶ 28. However, even if only "threatening individuals" may be disarmed, the issue is not properly before this court. *United States v. Rahimi*, 144 S. Ct. 1889, 1901 (2024). The facts of Shannon's underlying felony conviction were never elicited below. Because the issue was never raised, this court is in no position to rule on it. See *People v. Harris*, 2018 IL 121932, ¶ 41.

¶ 25                                   III. CONCLUSION

¶ 26 For the foregoing reasons, we affirm Shannon's conviction for unlawful possession of a weapon by a felon. We vacate defendant's convictions and sentences for aggravated unlawful use

of a weapon and remand this case to the circuit court to amend the sentencing order to reflect that those convictions and sentences have been vacated.

¶ 27 Affirmed in part and vacated in part; case remanded with directions.

¶ 28 Justice Sharon Oden Johnson, concurring in part, and dissenting in part:

¶ 29 I concur with the majority's findings: (1) that the trial court's sentence violated the one-act, one-crime doctrine where there were three convictions for the same act of possessing the same gun at the same moment, (2) that the stipulation entered in this case was insufficient to establish his guilt for the charge of unlawful possession of a firearm by a felon (*supra ¶* 17) and, (3) that defendant did not forfeit his challenge to the sufficiency of the evidence. I also agree that defendant forfeited his as-applied constitutional challenge on the facts of this case by failing to raise it in the court below. However, while this is not an issue that we necessarily must reach, I do not agree with the majority's analysis of caselaw or its characterization of defendant's claim (*supra ¶¶* 23-24). Defendant argues that his gun convictions are unconstitutional as applied to him because he has "no history of violence" and he is a nonviolent person. In response, the State argues that, had it "been put on notice that defendant was challenging the constitutionality" of his convictions based on "his purportedly non-violent nature *** there is no telling what additional, compelling evidence" the State might have found. Defendant's presentence report does reveal two prior arrests for resisting a peace officer, with no information proffered by either side about those incidents. Since the record is not adequately developed to address his as-applied claim, we cannot excuse the forfeiture. For these reasons, I agree with the majority's finding that the issue is forfeited at this time for our consideration.

¶ 30    More significantly however, as I explain below, I dissent because I find that the State failed in its burden to prove count 1.

¶ 31                    I. All 3 Counts Concern the Underage Offense

¶ 32    Defendant is a 30-year-old who lives with his fiancée and three children and works as a forklift operator. Other than the instant felony, his presentence investigation report reveals only one other felony, committed 15 years ago when he was 15 years old. On November 19, 2021, defendant was indicted in the instant case in a three-count indictment.

¶ 33    All three counts relied on defendant's one prior felony conviction for possessing a firearm in school when he was 15 years old. Specifically, count 1 charged the unlawful use or possession of a weapon by a felon, based on the school offense, and alleged that he had "knowingly possessed on or about his person" a firearm.

¶ 34    For counts 2 and 3, the indictment cited section 24-1.6 of the Criminal Code of 2012 (the Code), which provides, in relevant part, that a person commits the offense of aggravated unlawful use of a weapon, when he carries in any vehicle a firearm and one of the listed aggravating factors is present: that the firearm was uncased, loaded and immediately accessible and the defendant had not been issued a valid concealed carry permit (which was charged in count 2); or that the defendant lacked a currently valid FOID card (which was charged in count 3). 720 ILCS 5/24-1.6 (a)(1), (a)(3)(A-5), and (a)(3)(C) (West 2020). In addition, section 24.1.6(d)(3) provides, regarding his sentence, that "a person who has been previously convicted of a felony in this State or another jurisdiction *** is a Class 2 felony." 720 ILCS 5/24-1.6(d)(3) (West 2020).

¶ 35    Count 2 charged the aggravated unlawful use of a weapon, in that he knowingly carried in his vehicle an uncased, loaded and immediately accessible firearm, and he had not been issued a

concealed carry license. Count 2 also implicated the school offense, because it stated that "the State shall seek to sentence [defendant] as a class 2 offender, in that he has been previously convicted of a felony, to wit:" the school offense.

¶ 36    Like count 2, count 3 also charged aggravated unlawful use of a weapon, in that he knowingly carried in his vehicle a firearm; but count 3 charged that he had not been issued a FOID card. Count 3 had the same language as count 2 that the State would seek to sentence defendant as a class 2 offender based on the same school offense. As such, defendant was sentenced as a class 2 offender on all three counts.[1]

¶ 37    The majority finds that counts 2 and 3 must be vacated pursuant to the one-act, one-crime doctrine. However, if the State failed to prove count 1 beyond a reasonable doubt, as defendant argues and as I find below, that leaves counts 2 and 3, and only one of these aggravated use counts needs to be vacated to adhere to the one-act, one-crime doctrine. To further explain, I will discuss the failure of proof on count 1; then I will discuss the remaining aggravated use count.

¶ 38                              II. Offenses are Statutory

¶ 39    The best place to start when determining whether the State proved a conviction beyond a reasonable doubt is with the governing statutes or laws. 720 ILCS 5/1-3 (West 2020) ("No conduct constitutes an offense unless it is described as an offense in this Code or in another statute of this State.").

¶ 40    For count 1, the indictment cited section 24-1.1(a) of the Criminal Code of 2012 (the Code),

---

[1] The mittimus, entered on December 15, 2022, states that defendant was sentenced as a class 2 offender for all three counts.   Both counts 2 and 3 state that his conviction in those counts was for "Agg UUW/Veh/Prev Conviction." Defendant argues that he was improperly classified as a Class 2 offender on counts 2 and 3.

which provides, in relevant part, that "[i]t is unlawful for a person to knowingly possess on or about his person" any firearm "if the person has been convicted of a felony under the laws of this State or any another jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022). This language was controlling at the same at the time of the police discovery of the gun in this case, remained in effect as of the date of this opinion.

¶ 41    What has changed is the Juvenile Court Act of 1987. 705 ILCS 405/1-1 *et seq.* (West 2020). Defendant devotes ten of the 12 pages of his discussion of count 1 to this act, and yet the words "Juvenile Court Act" do not appear at all in the majority opinion. However before I set forth the relevant portions of this act, I will also supply the familiar rules of statutory interpretation, which apply whenever one discusses and interprets acts and statutes.

¶ 42                          III. Rules of Statutory Interpretation

¶ 43    With statutory interpretation, a court's primary goal is to ascertain and give effect to the intent of the statute's drafters. *VC&M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 30. The most reliable indicator of the drafters' intent is the language they chose to use in the statute itself. *VC&M, Ltd.*, 2013 IL 114445, ¶ 30. The drafters' language should be given its plain and ordinary meaning (*VC&M, Ltd.*, 2013 IL 114445, ¶ 30).

¶ 44    The interpretation of a statute presents a question of law that we review *de novo*. *People v. Howard*, 2016 IL App (3d) 130959, ¶ 18 ("applying the undisputed facts to the language of the statute to determine whether the essential elements have been proven *** is a question of law that we review *de novo*").

¶ 45                      IV. The Juvenile Court Act and the Offense at Issue

¶ 46    "[T]he 2014 amendments to the Juvenile Court Act redefined the exclusive jurisdiction of

the juvenile court to apply to those defendants who commit offenses prior to their eighteenth birthday. See Pub. Act. 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120)." *People v. Gray*, 2024 IL 127815, ¶ 24. The 2016 amendments reduced the number of offenses triggering automatic transfers from juvenile to adult court, specifically by eliminating the school offense that this 15-year-old defendant was charged with. See P.A. 99-258 § 5 (eff. Jan. 1, 2016). Given these changes, defendant argues that the State failed to prove a qualifying offense beyond a reasonable doubt.[2]

¶ 47    The effective dates are clear and unequivocal and need no interpretation. It is also beyond dispute that the offense in question, unlawful possession by a felon, occurred in 2021, long after these changes went into effect.

¶ 48    However, what is not clear is the effect on the facts here. One could argue that that the changes do not apply retroactively to defendant's 2007 school offense, such that it could still serve as a predicate for his current possession-by-a-felon charge. On the other hand, one could also argue that the changes apply prospectively to his possession-by-a-felon charge—and to every element of it.

¶ 49    The whole point of a possession-by-a-felon charge in the first place is to enforce a civil disability, namely, the denial of gun possession, on adult felons who are perceived as dangerous. By contrast, an adjudicated juvenile is not a criminal. An adjudication is never considered a conviction, and it does not normally carry with it any of the civil disabilities ordinarily imposed

---

[2] Defendant further argues that he would not have qualified for the restrictive provisions of a presumptive transfer and that it is highly unlikely that he would have been subject to a discretionary transfer, given defendant's circumstances and that, in 2018, the last year for which such data was then available, the State's Attorney filed no such motions for any offense.

on or resulting from conviction. 705 ILCS 405/1-8(A) (West 2020). For example, an adjudication does not generally prejudice an individual "from receiving any license granted by public authority." 705 ILCS 405/1-8(A) (West 2020). Thus, enforcing a disability from what would now be a juvenile adjudication would be to impose a stigma contrary to the purpose of the law. *In re Gwynne*, 215 Ill. 2d 340, 358 (2005) (a court should consider whether "[t]o hold otherwise would be inconsistent with the purpose of the law").

¶ 50 Section 24-1.1 carries with it a present-sense component where it states, "under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1 (West 2020). There is no "previously" modifying the word "under," so "under" means just that: "under." We would all be troubled if the word were interpreted to mean past felonies, such as possession of a small amount of marijuana or sodomy, which not long ago were both felony offenses. See *Lawrence v. Texas*, 539 U.S. 558 (2003) (finding unconstitutional a Texas statute that criminalized consensual sodomy). The word must connote a present sense, or it would stymie efforts for the law to evolve and advance, as it certainly has with respect to juvenile offenders, such as the prior 15-year-old at issue here. *Miller v. Alabama*, 567 U.S. 460, 471 (2012) ("children are constitutionally different"); *People v. Hilliard*, 2023 IL 128186, ¶ 20 (" 'as our society evolves, so too do our concepts of elemental decency and fairness which shape the "moral sense of the community" ' ") (quoting *People v. Leon Miller*, 202 Ill. 2d 328, 339 (2002). The "dictionary defines 'under' as 'subject to the authority, control, guidance, or instruction of.' " *State Farm Mutual Automobile Insurance Company v. Arroyo*, 2023 IL App (1st) 22057, ¶ 16 (quoting Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/under (last visited Nov. 28, 2023)). The legislature would lose its preeminence to control and guide policy if courts interpreted this phrase in a way

that turned back the clock to outdated or invalid statutes. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 56 (2011) ("the General Assembly, which speaks through the passage of legislation, occupies a 'superior position' in determining public policy"); *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168, 175 (1999) (" 'when the legislature has declared by law, the public policy of the State, the judicial department must remain silent' " (quoting *Collins v. Metropolitan Life Insurance Co.*, 232 Ill. 37, 44 (1907).

¶ 51    The verb tense reinforces the present sense of the prepositional phrase. The legislators could have simply said "was," but they did not. They chose the present perfect tense when they said, "has been convicted." As our supreme court has found, this is not a past tense, but rather it means existing in the past and continuing into the present. *In re Gwynne P.*, 215 Ill. 2d 340, 358 (2005). " '[T]he present' would be the time when the matter is being considered by the trial court." *Gwynne P.*, 215 Ill. 2d 340, 358 (2005). The law here did not continue into the present but changed.

¶ 52    While we do not expect legislators to be sophisticated grammarians, we still must consider the verb tense they used, particularly when they chose a more sophisticated tense, and where the State is seeking an interpretation where the simpler tense would have done just fine. See *Gwynne P.*, 215 Ill. 2d at 357-58. The tense is just as much a part of the statute as the other words used and is an element we must consider. *Gwynne P.*, 215 Ill. 2d at 357 (the supreme court said "[c]onsider the language the General Assembly has employed," when discussing the present perfect tense and stressing that the statute "does not speak in the past tense").

¶ 53    Further, the sole object of the verb phrase is the word "felony" with the "under" prepositional phrase. In this way, this case is different from other cases where the phrase "has been convicted" had no object. Every word in a statute must be given meaning and not treated as

superfluous. *People v. Gutman*, 2011 IL 110338, ¶ 12 ("Each word, clause, and sentence of a statute should be given reasonable meaning, if possible, and should not be considered superfluous."). If the phrase "has been convicted," as interpreted by other courts, means the same as "has been convicted … under the law of this State," then the "under" phrase has no meaning and is rendered superfluous. Thus, other cases that have interpreted the phrase "has been convicted" alone are not informative and readily distinguishable. See *Hayashi v. Illinois Dept. of Financial and Professional Regulation*, 2014 IL 116023, ¶ 18 ("the Act," before the court, "could have included limiting language," if it intended to indicate that only certain convictions qualified).

¶ 54 This sentence in section 24-1.1(a) could be read as either allowing an outstanding felony to qualify as a predicate and, thereby, an element of a present offense, or that the predicate conviction must be both outstanding and still statutorily valid. It begs the question of whether its under the law then in effect or now in effect. Since the statute is ambiguous on this issue, I look to the burden of proof.

¶ 55 The burden of proof in a criminal case is on the State. It is up to the State to prove beyond a reasonable doubt that the defendant had a qualifying conviction. The burden is not on a defendant to prove the conviction was not qualifying. "When construing criminal statutes, the rule of lenity requires that any ambiguity must be resolved in that manner which favors the accused." *People v. Jones*, 223 Ill. 2d 569, 581 (2006). As our supreme court has admonished us repeatedly, we must be ever "mindful of the well-established principle that the penal statutes are to be construed strictly in favor of the defendant." *People v. Polykala*, 203 Ill. 2d 198, 209 (2003); *People v. Whitney*, 188 Ill. 2d 91, 98 (1999) ("Any ambiguity in a penal statute should be construed and resolved in favor of the defendant."). Construing the words of the statute in favor of the defendant leaves no option

but to find that the State has failed in its burden of proof on a key element of the offense in count 1.

¶ 56                                     V. *Walker* and *In re N.G.*

¶ 57     Instead of examining the words of the statute, the majority quotes the supreme court case of *People v. Walker*, 211 Ill. 2d 217 (2004), but it cites the case out of context. The majority quotes *Walker* for the proposition that, in an unlawful possession of a felon case, the State has to prove "only the defendant's felon status." *Walker*, 211 Ill. 2d at 337. However, a reading of the whole opinion shows that what was meant by that quote is that the State did not have to prove a "specific" felony or type of offense. *Walker*, 211 Ill. 2d at 337.

¶ 58     The issue in *Walker*, as stated by the court, was "whether the trial court abused its discretion by allowing the prosecution to present evidence of the name and nature of defendant's prior conviction when a stipulation was available." *Walker*, 211 Ill. 2d at 328. The court balanced the probative value of naming the specific offense against the risk of unfair prejudice to the defendant and found that the risk outweighed the value, when the defendant had offered a stipulation. *Walker*, 211 Ill. 2d at 337-41. However, in that case, the fact of a qualifying felony was a given, by all sides, and, hence, readily distinguishable from the case at bar where the law changed and defendant's prior sentence would have been a juvenile adjudication rather than an adult felony conviction.   It was simply a nonissue in that case—not so here.

¶ 59     For further support, the majority cites the supreme court case of *In re N.G.*, 2018 IL 121939.   In *N.G.*, the appellate court had (1) found that a conviction had no legal force or effect in the parental-rights termination hearing on review before it, and (2) then *sua sponte* vacated the criminal conviction. *N.G.,* 2018 IL 121939, ¶ 2. The supreme court agreed on both points. *N.G.,*

2018 IL 121939, ¶ 52. The majority here cites the case for the proposition that "[a] defendant remains bound by a judgment until a court acts to overturn that judgment." *Supra* ¶ 19. However, the conviction in *N.G.* was not entitled to legal force or effect, and "could be given none," even prior to its formal vacatur. *N.G.,* 2018 IL 121939, ¶ 52; *accord* ¶ 93 (J. Kilbride, specially concurring ("it is fundamentally unfair to use a void conviction based on a facially unconstitutional statute against a defendant in a subsequent proceeding when he or she has not taken affirmative action to vacate the void conviction").

¶ 60 The majority seems to suggest that where a defendant has not acted to vacate a conviction, he has no further redress. *Supra* ¶ 19. However, that sentiment was eloquently rebutted by Justice Neville in his *N.G.* concurrence, where he stated that it would be manifestly unfair to place that burden on defendants "who are the least equipped to undertake" it. *N.G.,* 2018 IL 121939, ¶ 99 (J. Neville, specially concurring).

¶ 61 The majority also cites *People v. McFadden*, 2016 IL 117424, but *McFadden* was explicitly overruled by our supreme court in *N.G.,* 2018 IL 121939, ¶ 84 ("*McFadden* is hereby overruled"). However, the majority claims that *McFadden* was overruled "on other grounds." *Supra* ¶ 18. The majority argues that *N.G.* did not overrule *McFadden*'s finding that the State had to prove only felon status and, thus, it was, up to defendant to try to vacate his conviction before engaging in constitutionally protected conduct. *McFadden*, 2016 IL 117424, ¶ 27. However, *N.G.* held just the opposite. *N.G.* found that "the rule announced in *McFadden* requiring vacatur *** prior to engaging in the subsequent constitutionally protected conduct" would raise serious due process concerns. *N.G.,* 2018 IL 121939, ¶ 83.

¶ 62 For these reasons, I do not find these cases persuasive and find that they do not detract

from my conclusion that the State failed in its burden of proof on count 1.

¶ 63                                VI. The Remaining Counts

¶ 64     As I noted before, this conclusion still leaves standing counts 2 and 3, but one of these two counts must be vacated under the one-act, one-crime doctrine. Since we need to remand for resentencing, I would remand to allow the trial court to determine which count should be vacated. In addition, the issue of whether it is appropriate to sentence defendant as a class 2 offender will be ripe at that time. Since we should avoid issuing advisory opinions, this is not an issue that we need address at this time.

¶ 65     In sum, I agree with the majority (1) that the trial court's sentence violated the one-act, one-crime doctrine; (2) that the stipulation was insufficient to establish guilt for the charge of unlawful possession of a firearm by a felon; (3) that defendant did not forfeit his challenge to the sufficiency of the evidence on this charge; and (4) that he did forfeit his as-applied constitutional challenge (although for slightly different reasons than as stated by the majority). Like the majority, I would remand for resentencing; however, I would remand for resentencing on one of the aggravated unlawful use counts. I would permit the trial court to consider: which count to vacate; and which class applied on the remaining count.

***People v. Eric Shannon*, 2024 IL App (1st) 230042**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CR-1419701; the Hon. Neera Lall Walsh, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, State Appellate Defender, of Chicago (Douglas R. Hoff, Deputy Defender, Kelly Anne Burden, Assistant Appellate Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People. |